694 So.2d 331 (1996)
John L. HUGHES
v.
CARROLL TIMBER COMPANY.
No. 96 CA 0031.
Court of Appeal of Louisiana, First Circuit.
October 1, 1996.
*332 Robert J. Carter, Greensburg, for Plaintiff-Appellee.
R. Gray Sexton, Baton Rouge, for Defendant-Appellant.
Before LOTTINGER, C.J., and FOIL and FOGG, JJ.
FOGG, Judge.
John L. Hughes filed this workers' compensation action against his employer, Carroll *333 Timber Company, and its insurer, Guarantee Mutual Life Company, to recover disability benefits and medical expenses related to a hypertensive stroke he suffered while working. After a trial on the merits, the hearing officer awarded compensation and medical expenses to Hughes, finding that he met the burden of proof required of stroke claimants as provided by LSA-R.S. 23:1021(7)(e). Carroll Timber appeals that judgment, contending the hearing officer erred in finding a work related accident and permanent disability. Hughes answered the appeal contending the hearing officer erred in failing to award him statutory penalties and attorney's fees.
On August 18, 1994, the day Hughes suffered his stroke, he was a forty-seven year old man employed by Carroll Timber as a log cutter. On that morning, Hughes arrived at work to find that rainy weather the night before would make it more difficult to load the logs cut the previous day onto trucks. Because three trucks were waiting to be loaded, the job supervisor asked the workers to hurry while building a ramp which would enable the transport of the logs over the wet ground to the trucks. After approximately two hours of working at an increased rate, Hughes began to feel ill. He sat on a log and waited for his co-workers to clear the woods so that a truck could reach him as he was too weak to walk. Upon arriving at Pointe Coupe General Hospital, approximately one hour after the onset of his illness, Hughes was diagnosed with a cerebral vascular accident or stroke.
On appeal, Carroll Timber contends the hearing officer erred in awarding Hughes workers' compensation benefits. The requirements for a successful claim for workers' compensation benefits are set forth in LSA-R.S. 23:1031 A, which provides:
If an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.
Effective January 1, 1990, the legislature redefined these requirements with respect to heart-related and perivascular injuries by enacting LSA-R.S. 23:1021(7)(e). Then, in the case of Charles v. Travelers Ins. Co., 627 So.2d 1366 (La.1993), the Court held that a cerebral vascular accident, commonly called a stroke, constitutes a "perivascular injury." LSA-R.S. 23:1021(7)(e) provides as follows:
Heart-related or perivascular injuries. A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.
This statute makes it more difficult for a claimant to prove that heart-related and perivascular injuries suffered on the job are compensable. Specifically, the amended statute changes the law in such cases in at least three respects. First, it heightens the burden of proof the claimant must show from a preponderance of the evidence to clear and convincing evidence. Second, it changes the standard that the claimant's physical work stress must be compared to, requiring his or her physical work stress to be extraordinary and unusual when compared to the physical work stress of the average employee in that occupation. Third, it heightens the required causal link between that work stress and the heart injury by requiring the physical work stress to be the predominant and major cause of the heart-related or perivascular injury. Harold v. La Belle Maison Apartments, 94-0889 (La.10/17/94); 643 So.2d 752.
The first prong of the amended statute requires the claimant to prove by clear and convincing evidence that the physical work stress he experienced was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee *334 in that occupation. LSA-R.S. 23:1021(7)(e)(i). The terms "extraordinary" and "unusual" require a claimant to prove that physical work stress went beyond what was usual, regular or customary in relation to the average employee in that occupation. Harold v. La Belle Maison Apartments, 94-0889 (La. 10/17/94); 643 So.2d 752.
In the instant case, Hughes was told by his supervisor to "hurry up" so that they could get three waiting trucks loaded more quickly. The fact that the supervisor wanted the crew to work faster that day is corroborated by the testimony of two other workers. Hughes testified that he was working twice as fast as usual that morning. Hughes has proven by clear and convincing evidence that he suffered a stroke while under orders to work faster than normal. We find that the hearing officer did not err in determining that physical work stress caused by physical labor performed rapidly was extraordinary and unusual.
The second prong of the amended statute requires Hughes to prove by clear and convincing evidence that his physical work, stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of his stroke. LSA-R.S. 23:1021(7)(e)(ii).
The medical testimony indicates strokes are due to elevated blood pressure, which can be caused by stress, physical exercise and pain. Hughes contends that the stress and physical exertion of working faster caused his stroke.
Carroll Timber contends that a pre-existing condition caused Hughes' stroke. Specifically, Hughes was diagnosed with hypertension, a disease which causes high blood pressure, four or five years prior to his stroke. At that time, his physician prescribed medication which successfully reduced his blood pressure to an acceptable level. However, his physician testified that Hughes did not consistently take his medication and when not medicated his blood pressure exceeded acceptable levels. Hughes' physician stated that hypertension must be continually treated with medication to maintain a safe blood pressure level. Hughes' testimony indicates that he was not taking his medication at the time of his stroke because he thought he was "all right."
The evidence reflects that Hughes performed heavy physical labor over the years after he was diagnosed with hypertension without having a stroke. He testified that he felt fine the day the stroke occurred and had no warning of its onset. Therefore, we find no error in the hearing officer's conclusion that Hughes has proven by clear and convincing evidence that the performance of physical labor at a rapid rate was the predominant and major cause of his stroke.
In summary, we find that Hughes has met the burden of proof required of stroke claimants under LSA-R.S. 23:1021(7)(e). Clearly, he has suffered a personal injury by accident arising out of and in the course of his employment and is entitled to workers' compensation benefits. LSA-R.S. 23:1031 A.
The appellants further contend the hearing officer erred in determining that Hughes is permanently totally disabled. At the beginning of trial of this matter, the parties stipulated that Hughes "is currently temporarily totally disabled and has been since the date of the accident of 8-14-94." The evidence in the record concerning Hughes' physical condition after the stroke is very limited and insufficient to support the hearing officer's finding of permanent total disability. Therefore, we will amend the judgment to reflect that Hughes is temporarily totally disabled.
We now turn to the issue of when the benefits will cease. LSA-R.S. 23:1221(1)(d) provides, in pertinent part, as follows:
An award of benefits based on temporary total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made, and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required, or six months after the injury, whichever first occurs. If the claimant contends that his disability is of a temporary nature, but extends beyond this six-month period, he *335 must submit a claim for extension of the period of temporary total disability under R.S. 23:1310.3.
The starting point for interpretation of any statute is language of the statute itself. Touchard v. Williams, 617 So.2d 885 (La.1993). When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and its letter shall not be disregarded in search of the intent of the legislation, Billiot v. B.P. Oil Co., 93-1118 (La. 9/29/94); 645 So.2d 604, or under the pretext of pursuing its spirit. Sumrall v. Luhr Bros., 95-0779 (La.App. 1 Cir. 12/15/95); 665 So.2d 796, writ denied, 96-0187 (La. 3/15/96); 669 So.2d 425.
When the language of a law is ambiguous or susceptible of two reasonable interpretations, it must be interpreted as having meaning that best conforms with the purpose of the law. LSA-C.C. art. 10; In re C.B., 94-0755 (La. 10/17/94); 643 So.2d 1251. However, the courts are not free to rewrite law to effect purpose that is not otherwise expressed. Backhus v. Transit Cas. Co., 549 So.2d 283 (La.1989). The courts may not impute meanings which extend statutes to situations which the legislature never intended to be covered thereby. State v. All Pro Paint & Body Shop, Inc., 93-1316 (La. 7/5/94); 639 So.2d 707.
The above statute reflects legislative amendments which became effective on January 1, 1990. The language of the statute, in clear and unambiguous terms, changes the criteria for determination of the term of an award of benefits based on total temporary disability. Maximum medical improvement is no longer the standard for determining the point at which a workers' compensation claimant's temporary total benefits will stop. The amended statute provides that the initial award of benefits is limited to the period of six months after the date of the injury or until the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made, and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required, whichever comes first. LSA-R.S. 23:1221(1)(d). Therefore, the initial award will be for, at most, six months after the date of injury. If the claimant contends that his injury extends beyond this initial six-month period, he must submit a claim for extension of the period of temporary total disability under LSA-R.S. 23:1310.3. LSA-R.S. 23:1221(1)(d). The statute is silent as to the term of an extension of the initial period of temporary total disability awarded to the claimant. In fact, no statutory provision provides a set, maximum number of weeks for which temporary total disability benefits can be collected. See Eglin v. United Gas Pipeline, 95-721 (La.App. 3 Cir.1996); 670 So.2d 250.
In the instant case, the injury occurred on August 18, 1994. Trial of the matter was held on September 14, 1995 and the judgment was rendered on October 9, 1995. Therefore, the judgment was rendered more than six months after the date of injury. The record does not reflect that a claim for an extension of the period of disability was filed by the claimant. However, we need not reach the issue of whether the lack of a claim for extension of benefits defeats the claimant's claim for benefits beyond the initial six month period because, herein, the parties stipulated that the disability "is ongoing." This stipulation displaced the claimant's burden of proving his disability extended beyond the initial six month period. In accordance with the stipulation, benefits will be awarded on an ongoing basis until it is proven that the claimant no longer suffers from a temporary total disability.
Additionally, the parties stipulated that Hughes was earning a minimum of $100 per day for the first four loads of logs he cut and $10 for each load he cut thereafter. Under this stipulation, it is clear that Hughes earned a minimum of $500 per week; however, it is unclear how much he earned for cutting additional loads at $10 per load. The record as a whole does not show how many additional loads Hughes cut on an average day. Therefore, we will base the computation of his benefits on an average weekly wage of $500 and order the defendant to pay *336 weekly workers' compensation benefits for the period of disability, which according to the stipulation began on the date of injury and is ongoing, at a rate of sixty-six and two-thirds percent of $500 or $333.30.
Hughes answered this appeal, contending the trial court erred in failing to award him penalties and attorney's fees. At all times pertinent hereto[1], LSA-R.S. 23:1201E provided for the imposition of a penalty on workers' compensation benefits when the employer or insurer fails to pay timely and the employee's entitlement to benefits is not reasonably controverted. LSA-R.S. 23:1201.2 provided, in pertinent part, that there must be a finding that the defendant acted arbitrarily and capriciously and without probable cause before attorney's fees can be assessed. Whether the refusal to pay benefits warrants the imposition of penalties and attorney's fees is a factual question which will not be disturbed on appeal in the absence of manifest error. Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736 (La. App. 1 Cir.), writ denied, 553 So.2d 466 (La.1989). After carefully considering the record herein, we are unable to conclude that the trial court manifestly erred in deciding penalties and attorney's fees were not warranted.
For the foregoing reasons, the judgment of the Office of Workers' Compensation is amended to find that Hughes is temporarily totally disabled and to award temporary total disability benefits to Hughes for the period of disability at a weekly rate of $333.30 together with interest thereon from October 9, 1995, the date of the hearing officer's judgment, until paid. In all other respects, the judgment is affirmed. Costs are assessed equally between the appellant and the appellee.
AMENDED, AND AS AMENDED, AFFIRMED.
LOTTINGER, C.J., concurs.
NOTES
[1] In Elswick v. Highway Transport, 96-0014 (La. App. 1 Cir. 9/27/96); 680 So.2d 1364, we held that the Acts 1995, No. 1137, constituted a substantive change in the workers' compensation law and, therefore, must be applied prospectively.