Dear Representative Franklin:
Your question to this office concerns the current composition of the Board of Commissioners (the Board) of the Lake Charles Harbor and Terminal District. Until recently, the membership of the Board included a representative of a racial minority; however, this member no longer serves, as his term of office expired in May of 2010. The Governor's appointee to fill the resulting vacancy is not a member of a racial minority. You ask if the Board can legally conduct business, given that the current membership of the Board does not include a member of a racial minority.
The Board of Commissioners of the Lake Charles Harbor and Terminal District consists of seven members, whose appointment, qualifications, and terms of office are governed by La.R.S. 34:202. The statute provides, in pertinent part.
A. (1) The governing authority of the district shall be a board of commissioners which shall be known as the Board of Commissioners of the Lake Charles Harbor and Terminal District. The board shall consist of seven members who shall be citizens of the United States and qualified voters, and inhabitants of this district during their terms of office.
(2)(a) The governor shall appoint commissioners, subject to Senate confirmation. Except for initial appointments and terms, which are provided for in Subparagraph (b) of this Paragraph, commissioners shall serve four-terms and shall be appointed from nominations as follows:
(i) One of the successors to the two members serving initial terms as provided in Item (b)(i) of this Paragraph shall be appointed from a list of three nominees submitted by the governing authority of Lake Charles *Page 2 
and the other from a list of three nominees submitted by the governing authority of Calcasieu Parish.
(ii) One of the successors to the two members serving initial terms as provided in Item (b)(ii) of this Paragraph shall be appointed from a list of three nominees submitted by the governing authority of Westlake and the other from the list of three nominees submitted by the governing authority of Cameron Parish.
(iii) Successors to the three members serving initial terms as provided in Item (b)(iii) of this Paragraph shall be appointed from a list of nominees submitted jointly by the state legislators who represent any part of the district.
(b) All seven initial appointments after May 29, 2003 shall be made from a list of nominees submitted jointly by the state legislators who represent any part of the district. A vacancy in an initial term prior to the expiration of the term shall be filled in the same manner as these initial appointments. Initial terms, as determined by lot at the first meeting, shall be as follows:
(i) Two members shall serve two years.
(ii) Two members shall serve three years.
(iii) Three members shall serve four years.
(3) Except as otherwise provided by Paragraph (2) of this Subsection, any vacancy in the membership of the board shall be filled for the remainder of any unexpired term, in the same manner as the person vacating the position was appointed.
(4) Nominations from the legislative delegation and appointments by the governor from those nominations shall be made so that the composition of the board includes at least two members of a racial minority or one member of a racial minority and one woman.
(5) No member shall serve more than two consecutive terms. After having two consecutive terms, a commissioner shall not be eligible for appointment to the board for a period of eight years after completion of the second term.
Under this statutory scheme, the members of the Board serve fixed and staggered terms of four years. As vacancies occur, the Governor makes *Page 3 
successor appointments in the following manner: one member is selected from a list of three nominees submitted by the governing authority of the City of Westlake, one member is selected from a list of three nominees submitted by the governing authority of Cameron Parish, one member is selected from a list of three nominees submitted by the governing authority of the City of Lake Charles, and one member is selected from a list of three nominees submitted by the governing authority of Calcasieu Parish. The Governor appoints the remaining three members from a list of nominees submitted by the legislative delegation representing the district.
With the Governor's most recent appointment to the Board included, the Board now consists of six members who are not members of a racial minority, and one member who is a female appointee. Because the Board does not have a member representing a racial minority, you question the legal ability of the Board to conduct business. This reasoning is based upon an interpretation of La.R.S. 34:202 which requires the Governor to make all Board appointments so that the composition of the Board at all times includes two representatives of a racial minority, or one representative of a racial minority and one female appointee. However, for the following expressed reasons, it is the opinion of this office that the language of La.R.S. 34:202 as it is currently written does not support this interpretation of the law.
In our review of La.R.S. 34:202, we are mindful that the starting point for the interpretation of any statute is the language of the statute itself. Touchard v. Williams, 617 So.2d 885 (La. 1993). Further, the general rules of statutory interpretation set forth in the Louisiana Civil Code and the Louisiana Revised Statutes give us guidance in our analysis of La.R.S. 34:202. These general rules of statutory interpretation provide the following:
C.C. art. 9: When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
C.C. art. 11: The words of a law must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the law involves a technical matter.
C.C. art. 13: Laws on the same subject matter must be interpreted in reference to each other.
La.R.S. 1:3: Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate *Page 4 
meaning. The word "shall" is mandatory and the word "may" is permissive.
La.R.S. 1:4: When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.
This office has reviewed the language of La.R.S. 34:202 using the foregoing rules of statutory construction. Having made this examination, the following discussion reflects our interpretation of the law relative to the qualification requirements for Board membership. We also provide our opinion regarding the procedures which must be followed by the nominating authorities, and the Governor, in the appointment process.
We first examine the law governing the appointments of those four members who are individually associated with a particular governing authority. These four appointees to the Board are selected by the Governor from nominee lists submitted by the governing authorities of the City of Lake Charles, Cameron Parish, the City of Westlake, and Calcasieu Parish.
When drafting the list of nominees, the law requires each governing authority to make certain that all nominees are "citizens of the United States and qualified voters, and inhabitants of this district during their terms of office."[1] However, these are the only qualification requirements which the governing authorities must consider when selecting the list of nominees. La.R.S. 34:202 imposes no requirement upon the four governing authorities to include either members of racial minorities, or females, on their respective list of nominees.[2]
As a result, the governing authorities are free to submit lists which reflect nominees who are members of a racial minority, or non-members of a racial minority, or are all female appointees, or all male appointees, or any combination of the foregoing. In a prior opinion of this office, we reviewed La.R.S. 34:202 and reached a similar conclusion, advising the Mayor of Westlake that "the [Board] nominations from the governing authority for the City of Westlake are not required by law to include a racial minority." See
La. Atty. Gen. Op. 06-0158.
Further, the language of La.R.S. 34:202 imposes no obligation on the Governor to consider the composition of the Board at the time he selects his appointee for any one of the four positions associated with a governing authority. Nor does the statute require the Governor to select a member of a racial minority or a female *Page 5 
appointee from the list of three submitted by a governing authority, in the event such nominees are submitted to him for consideration.
In certain factual situations, the mechanics of the statute afford the Governor no opportunity to appoint a member of a racial minority or a female to the Board. As already discussed, under the statute a governing authority may legally submit to the Governor a list of three nominees who are not female, and not members of a racial minority. La.R.S. 34:202(A)(2)(a) directs that the Board's members"shall be appointed from nominations" as provided by law, and under the rules of statutory construction, the use of the word "shall" is mandatory.[3] In this scenario, the law requires the Governor to make his selection from the list as submitted by the governing authority; the law does not give the Governor the discretion to reject a list for lacking females or members of racial minorities.
The Governor's most recent appointment to the Board is a male who is not a member of a racial minority. The Governor selected this appointee from a list of three nominees submitted by the governing authority of Cameron Parish. While we are not advised of the racial or gender status of the other two nominees, this factual information is unnecessary for us to make a determination regarding the validity of this appointment. Based upon our interpretation of La.R.S. 34:202, the governing authority of Cameron Parish was not required to include either female appointees or representatives from a racial minority on its list of nominees submitted to the Governor. Neither was the Governor required by law to consider the composition of the Board at the time of this appointment. Thus, this most recent appointment by the Governor is not invalidated on the basis that the Board lacked representation of a racial minority at the time of the appointment. It is our opinion that in making this appointment, the Governor acted in compliance with the requirements of the law.
We next examine the requirements of the law relative to the remaining three appointments, which are associated with the legislative delegation of the district. The Governor makes these three appointments after selecting his appointees from a list of nominees submitted by the legislative delegation. Of import here is La.R.S. 34:202(4), which includes specific qualifying language applicable to the legislative delegation and the Governor: the nominations and the appointments "shall be made so that the composition of the board includes at least two members of a racial minority or one member of a racial minority and one woman."
It is our opinion that here the law clearly imposes an obligation on the legislative delegation to consider the composition of the Board when preparing its list of nominees for these three appointments. If at that time the Board lacks "two *Page 6 
members of a racial minority or one member of a racial minority and one woman" as required by La.R.S. 34:202(4), it is our opinion that the law requires the legislative delegation to submit nominees in a manner that enables the Governor to make these three appointments so that the Board's membership reflects this composition.
As noted, it is our opinion that La.R.S. 34:202(4) requires the Governor to consider the composition of the Board at the time he makes these three appointments. Here, the Governor must make these three appointments so that the composition of the Board includes at least two members of a racial minority, or one member of a racial minority and one female.
The terms of the three positions associated with the legislative delegation will expire in May of 2011. Assuming the current composition of the Board remains unchanged, the expiration of these three terms will mean that the Board no longer has a female member, in addition to lacking representation from a racial minority. It is the opinion of this office that La.R.S. 34:202(4) will at that time require the Governor to make appointments to fill these three positions such that the Board membership includes least two members of a racial minority or one member of a racial minority and one woman.
You have also asked if the Board may legally conduct business as it is currently constituted. We direct your attention to that portion of La.R.S. 34:204 which provides "four voting members of the board shall constitute a quorum." The statute makes no qualification relative to which members may compose the quorum; rather, it is the number of members present which is determinative of whether or not the Board can conduct business. Because we find the language of La.R.S. 34:204 to be clear and unambiguous, it is our opinion that the Board can legally conduct business under its current composition.
In your letter to this office you also asserted that the current composition of the Board may well represent "a breach in the spirit and intent of the legislation that created the Board." In response, we direct your attention to La.R.S. 1:4, providing "when the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." See also Hughes v. Carroll Timber Co., 96-0031 (La.App. 1 Cir. 10/1/96), 694 So.2d 331; (When the language of the statute is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written and its letter shall not be disregarded in search of the intent of the legislation or under pretext of pursuing its spirit);Id. at 335. As directed by this legal authority, it is the opinion of this office that La.R.S. 34:202 must be applied as written. *Page 7 
Finally, it is the opinion of this office that legislative amendment to La.R.S. 34:202 is required to make certain that the composition of the Board always includes as members representatives of a racial minority.
We hope the foregoing is helpful to you. Should you have other questions in which we may provide assistance, please contact this office.
Very truly yours,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
BY:__________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:arg
[1] La.R.S. 34:202(A)(1).
[2] See La.R.S. 34:202(A)(2)(i), applicable to the City of Lake Charles and Calcasieu Parish appointees, and La.R.S. 34:202(A)(2)(ii), applicable to the City of Westlake and Cameron Parish appointees.
[3] La.R.S. 1:3.