733 So.2d 11 (1999)
Paul L. PARFAIT, Jr.
v.
GULF ISLAND FABRICATION, INC.
No. 97 CA 2104.
Court of Appeal of Louisiana, First Circuit.
January 6, 1999.
Rehearing Denied February 26, 1999.
*15 Michael J. Samanie, David B. Allen, Samanie, Barnes & Allen, Houma, LA, Attorneys for Plaintiff-Appellee Paul L. Parfait, Jr.
William S. Bordelon, Houma, LA, Attorney for Defendant-Appellant Gulf Island Fabrication, Inc.
BEFORE: GONZALES, PARRO, and GUIDRY, JJ.
PARRO, J.
In this workers' compensation case, an employer appeals a judgment awarding temporary total disability benefits, medical expenses, penalties, and attorney fees in favor of the claimant. For the following reasons, we reverse in part, amend in part, affirm in part, and render.

Factual Background and Procedural History
Between September 28, 1996, and October 7, 1996, while employed by Gulf Island Fabrication, Inc. (Gulf Island) as a sandblaster/painter, Paul L. Parfait, Jr. (Parfait) allegedly sustained a work-related accident in the course and scope of his employment. Parfait contends that, as he pulled on a sandblasting hose, he felt pain in his hip and lower back. This pain allegedly worsened as he continued to perform heavy manual labor. On October 7, 1996, he told his supervisor that he was in pain and desired to leave work to see his family doctor, Dr. Brian Matherne. At this point in time, Parfait thought an arthritic condition in his hip may have been causing the pain. Initially, Dr. Matherne diagnosed arthritis for which he prescribed medication.
Several days later, Parfait returned to see Dr. Matherne, but instead saw his partner, Dr. Bruce Guidry. Because of his continued pain, Dr. Guidry ordered an MRI of the lumbar spine. On October 15, 1996, the MRI was performed and revealed a very large extruded fragment at the L4-5 level which was impinging on the spinal cord. Dr. Guidry told Parfait to see an orthopedic surgeon. On this advice, Parfait saw Dr. Richard Landry on October 18, 1996, who informed him that he had a very serious condition in his low back which required immediate surgery. Based on this diagnosis, Parfait underwent a surgical procedure on October 23, 1996.
Subsequently, Parfait notified Gulf Island that he had sustained a work-related injury, and an accident report was completed on November 11, 1996. Gulf Island declined to pay workers' compensation benefits. Therefore, Parfait filed a formal claim with the Office of Workers' Compensation Administration against Gulf Island, alleging that it refused to provide reimbursement for medical treatment and to pay benefits. In conjunction with his claim, Parfait sought penalties and attorney fees.
*16 After a hearing, the workers' compensation judge made the following findings: (1) Parfait was involved in an accident; (2) Parfait had proven a disability that was causally related to his work accident; (3) such disability was expected to continue into the future; (4) his statements regarding prior history were not willfully made for the purpose of obtaining workers' compensation benefits, thus LSA-R.S. 23:1208 was inapplicable; (5) medical treatment was rendered in an emergency situation, thus LSA-R.S. 23:1142(B) limiting recovery to $750 where treatment was rendered without authorization was inapplicable; (6) LSA-R.S. 23:1142(E) was applicable; and (7) despite having medical authorization to obtain the information, Gulf Island failed to adequately investigate this claim in a timely fashion and relied on initial representations of an arthritic problem, even after it received information regarding the nature and severity of Parfait's condition, thus Gulf Island's actions or inactions were arbitrary and capricious.
Based on these findings, the workers' compensation judge entered judgment in favor of Parfait, awarding temporary total disability benefits from October 5, 1996, until he reached maximum medical improvement, plus all past medical expenses, all reasonable and necessary future medical expenses, and statutory penalties and attorney fees in the amount of $10,000. The judgment also denied Gulf Island's demand for a credit for the medical expenses paid by the group health insurer. From this judgment, Gulf Island appeals and contends the workers' compensation judge erred in finding (1) Parfait sustained an accident; (2) Parfait did not violate LSA-R.S. 23:1208 by making false statements or misrepresentations regarding prior back injuries; (3) Parfait proved medical treatment was rendered in an emergency situation and LSA-R.S. 23:1142(B) was inapplicable; (4) Gulf Island's liability for medical expenses was not extinguished pursuant to the provisions of LSA-R.S. 23:1212, and Gulf Island was not entitled to a credit in proportion to the percentage of hospitalization insurance premium paid by it; and (5) Gulf Island was arbitrary and capricious. Gulf Island also submits the judge erred in awarding temporary total disability benefits for a period in excess of the maximum six-month period provided for in LSA-R.S. 23:1221(1)(d). Additionally, Gulf Island complains the judge erred in awarding penalties, attorney fees, and future medical expenses.

Standard of Review
Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556. The twopart test for the appellate review of a factual finding is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record further establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable factual basis in the record for the trial court's finding, no additional inquiry is necessary. However, if a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. See Stobart v. State, through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 882; Morris v. Norco Construction Company, 632 So.2d 332, 335 (La.App. 1st Cir.1993), writ denied, 94-0591 (La.4/22/94), 637 So.2d 163.

*17 Accident

LSA-R.S. 23:1021(1) defines an accident as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." In order to recover workers' compensation benefits, an employee must show that he received a personal injury by accident arising out of and in the course and scope of his employment and that said injury necessitated medical treatment or rendered the employee disabled, or both. Augustus v. St. Mary Parish School Board, 95-2498 (La.App. 1st Cir.6/28/96), 676 So.2d 1144, 1149. The primary burden is to establish an injury was sustained as a result of an accident occurring in the course and scope of employment. LSA-R.S. 23:1031. The fact that an employee does not notify his employer immediately that he suffered an accident or does so several days after the date of the alleged injury does not prohibit a finding that the employee sustained an accident. Middleton v. International Maintenance, 95-0238 (La.App. 1st Cir.10/6/95), 671 So.2d 420, 424, writ denied, 95-2682 (La.1/12/96), 667 So.2d 523. see LSA-R.S. 23:1301. Moreover, an employee should not be barred from recovery because he did not realize or diagnose the full extent of his injury immediately after it happened. Middleton, 671 So.2d at 424.
The court in Bruno v. Harbert International Inc., 593 So.2d 357 (La.1992), concluded that the determination of whether an accident occurred is to be construed from the worker's perspective. Bruno, 593 So.2d at 360. Notably, however, the claimant's burden of proof is not relaxed, for he or she must still establish a work-related accident by a preponderance of the evidence. Bruno, 593 So.2d at 361. A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Bruno, 593 So.2d at 361.
Thus, in determining whether a worker has shown by a preponderance of the evidence that an injury-causing accident occurred in the course and scope of employment, the trier of fact is expected to focus on the issue of credibility because, absent contradictory circumstances and evidence, a claimant's testimony is accorded great weight. Bruno, 593 So.2d at 361. A workers' compensation judge's determinations as to whether the claimant's testimony is credible and whether the claimant has discharged his burden of proof are factual determinations which will not be disturbed upon review in the absence of manifest error or unless clearly wrong. Bruno, 593 So.2d at 361.
The record in this case shows Parfait's job required heavy physical labor every day, and in connection with his work, he pulled on sandblasting hoses that weighed approximately 65 pounds per section. Parfait testified that after pulling on one of these hoses, he felt pain in the area of his hip, lower back, and tailbone, which steadily progressed over several days until he was unable to work any further. At this point, he reported complaints of pain to his supervisor and asked that he be allowed to leave work to see his family physician. Co-employees recalled his complaints on the day he left work.
The evidence supports Parfait's claim that the onset of pain was contemporaneous with his pulling of sandblasting hoses while at work, and he reported this pain within a short period of time. This evidence corroborates Parfait's testimony, and there is no other evidence to discredit or cast serious doubt upon his version of the incident.[1] Based on the workers' compensation *18 judge's credibility determinations and after consideration of all of the evidence, we cannot say the judge was clearly wrong in finding that Parfait proved, by a preponderance of the evidence, that he sustained personal injury by accident arising out of and in the course and scope of his employment.

LSA-R.S. 23:1208
Gulf Island contends the trial court erred in finding Parfait did not violate LSA-R.S. 23:1208 by making false statements or misrepresentations regarding prior back injuries. At all pertinent times, LSA-R.S. 23:1208 provided, in relevant part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * *
E. Any employee violating this Section shall ... forfeit any right to compensation benefits under this Chapter.
In Resweber v. Haroll Construction Company, 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7, the supreme court noted the requirements for forfeiture of benefits under section 1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Resweber, 660 So.2d at 12. The word "willful" has been defined as "proceeding from a conscious motion of the will; voluntary; knowingly; deliberate; intending the result which actually comes to pass; designed; intentional; purposeful; not accidental or involuntary." Grant v. Natchitoches Manor Nursing Home, 96-1546 (La.App. 3rd Cir.5/14/97), 696 So.2d 73, 76, writ denied, 97-1582 (La.10/17/97), 701 So.2d 1330.
In a pre-trial deposition, Parfait failed to state that he had sought the care of a chiropractor for a previous back injury, which allegedly occurred while cutting grass at his home. However, the chiropractor's name was listed by Parfait on answers to interrogatories. Also, Gulf Island was already aware of this situation because Parfait took off of work for treatment and had a "return-to-work" physical performed at Gulf Island's request. After the trial of this matter, the workers' compensation judge found that Parfait did not willfully make a false statement or misrepresentation in an attempt to secure payment of compensation benefits. The workers' compensation judge's findings are supported by the record and are not clearly wrong. Therefore, we do not find error in the judge's ruling concerning the inapplicability of LSA-R.S. 23:1208.

Term of Award for Temporary Total Disability Benefits
The workers' compensation judge held that Parfait would be entitled to indemnity benefits from October 5, 1996, until he reached maximum medical improvement. Gulf Island argues that LSA-R.S. 23:1221(1)(d) restricts the time limit to which an award of temporary total disability benefits can extend to a maximum of six months. We are thus presented with the issue of when the benefits will cease.
LSA-R.S. 23:1221(1)(d) provides:
An award of benefits based on temporary total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made, and the employee's physical condition has improved to the point that *19 continued, regular treatment by a physician is not required, or six months after the injury, whichever first occurs. If the claimant contends that his disability is of a temporary nature, but extends beyond this six-month period, he must submit a claim for extension of the period of temporary total disability under R.S. 23:1310.3.
This court has previously determined the clear and unambiguous terms of this statute provide that the initial award of benefits is limited to the period of six months after the date of the injury or until the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made, and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required (maximum medical improvement), whichever first occurs. Hughes v. Carroll Timber Company, 96-0031 (La.App. 1st Cir.10/1/96), 694 So.2d 331, 335. Therefore, the initial award will be for, at most, six months after the date of injury. Hughes, 694 So.2d at 335. However, if the employee contends that his disability is of a temporary nature, but extends beyond this six-month period, he must submit a claim for extension of the period of temporary total disability under LSA-R.S. 23:1310.3. LSA-R.S. 23:1221(1)(d.).
In this case, the judge found the injury occurred on September 28, 1996. Trial of this matter was held on June 30, 1997, and the judgment was rendered on July 18, 1997, more than six months after the date of injury. The record does not reflect that a claim for an extension of the period of temporary total disability was filed by Parfait, nor is there any evidence of a stipulation by the parties to a longer period of disability. Therefore, in light of these facts and the law, the initial award of temporary total disability benefits should have ceased after a period of six months from the date of the injury, or on March 28, 1997.[2] The workers' compensation judge erred in holding that Parfait would be entitled to such benefits until he reached maximum medical improvement.

Medical Expenses
An employer has a statutory duty to furnish all necessary medical treatment caused by a work-related injury. LSA-R.S. 23:1203(A);[3]Patterson v. Long, 96-0191 (La.App. 1st Cir.11/8/96), 682 So.2d 1327, 1334, writ denied, 96-2958 (La.2/7/97), 688 So.2d 499. The right to reimbursement for medical expenses is separate and distinct from the right to compensation. Ridlen v. St. Charles Manor Nursing Center, Inc., 94-275 (La.App. 5th Cir.10/12/94), 644 So.2d 244, 247, writ denied, 94-3039 (La.2/3/95), 649 So.2d 410. The question of whether the claimant is entitled to medical benefits is ultimately a question of fact, and the fact finder's resolution of that issue may not be disturbed by the appellate court in the absence of manifest error or unless clearly wrong. Starks v. Universal Life Insurance Company, 95-1003 (La.App. 1st Cir.12/15/95), 666 So.2d 387, 391, writ denied, 96-0113 (La.3/8/96), 669 So.2d 400.
To recover medical expenses under LSA-R.S. 23:1203, the claimant *20 must prove by a preponderance of the evidence that the expenses are reasonably necessary for treatment of a medical condition caused by the work injury. Patterson, 682 So.2d at 1334; see Spurrell v. Ivey, 25,359, 25,360 (La.App. 2nd Cir.1/25/94), 630 So.2d 1378, 1384. An award of medical expenses must be limited to those expenses shown to have been made necessary by the work-related accident. An injured employee is not entitled to recover for medical expenses where he or she fails to substantiate a claim. Starks, 666 So.2d at 391. Nonetheless, when a claimant alleges that he or she incurred medical expenses and that allegation is supported by a bill, unless there is sufficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident, it is sufficient to support the inclusion of the item in the judgment. Augustus, 676 So.2d at 1155.
Gulf Island argues that its liability for the treatment rendered to Parfait should be limited to $750, pursuant to LSA-R.S. 23:1142(B). At the time of Parfait's accident and injury, LSA-R.S. 23:1142 provided in pertinent part:[4]
A. Definitions. For the purposes of this Section, the following terms shall have the following meanings unless the context clearly indicates otherwise:
(1) "Payor" shall mean the entity responsible, whether by law or contract, for the payment of the medical expenses incurred by a claimant as a result of a work related injury.
B. Nonemergency care. Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer's workers' compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.
C. Emergency care. (1) In no event shall prior consent be required for any emergency procedure or treatment deemed immediately necessary by the treating health care provider. Any health care provider who authorizes or orders emergency diagnostic testing or treatment, when said diagnostic testing or treatment is held not to have been of an emergency nature, shall be responsible for all of the charges incurred in such diagnostic testing or treatment. Said health care provider shall bear the burden of proving the emergency nature of the diagnostic testing or treatment.
(2) Fees for those services of the health care provider held not to have been of an emergency nature shall not be an enforceable obligation against the employee or the employer or the employer's workers' compensation insurer unless the employee and the payor have agreed upon the treatment or diagnostic testing by the health care provider, except as provided in R.S. 23:1272(D).
* * *
E. Exception. In the event that the payor has denied that the employee's injury is compensable under this Chapter, then no approval from the payor is required prior to the provision of any diagnostic testing or treatment for that injury.
Generally, in order to avoid the $750 statutory cap on certain medical services, an employee must receive prior approval from his employer before he seeks medical attention for a work-related accident and resulting injury. However, exceptions to this approval requirement exist. See LSA-R.S. 23:1142(C) and (E).
*21 Under the exception found in LSA-R.S. 23:1142(E), when an employer or insurer has denied that a claimant's injury is compensable, the statutory cap does not apply. Washington v. Lyon's Specialty Company, 96-0263 (La.App. 1st Cir.11/8/96), 683 So.2d 367, 381, writ denied, 96-2944 (La.1/31/97), 687 So.2d 408. From the time it received notice of Parfait's workers' compensation claim on November 8, 1996, Gulf Island consistently contested that Parfait was involved in a work-related accident. Accordingly, Gulf Island is not entitled to the statutory cap on liability for unapproved nonemergency medical treatment rendered after November 8, 1996. However, we conclude LSA-R.S. 23:1142(E) would not apply to treatment rendered to Parfait prior to Gulf Island being notified that a work-related accident had occurred. With regard to medical services rendered prior to November 8, 1996, Parfait's health care providers were required to obtain Gulf Island's prior approval to preserve their right to pursue Gulf Island or Parfait for the costs of such medical services in excess of $750.
It is undisputed that Parfait's health care providers had not received prior approval from Gulf Island before providing medical services to Parfait. Thus, Gulf Island argues it was only obligated to pay $750 pursuant to LSA-R.S. 23:1142(B). The $750 cap provided for in LSA-R.S. 23:1142(B) clearly applies to each health care provider. Thus, Gulf Island's argument that Parfait is entitled to reimbursement for a total of $750 for medical services rendered prior to November 8, 1996, is without merit.
Under the exception found in LSA-R.S. 23:1142(C)(1), we must examine the emergency care provisions to determine if prior consent was required. If these provisions apply, prior approval would not have been necessary for the medical services rendered to Parfait prior to November 8, 1996.
Gulf Island argues the workers' compensation judge erred in finding Parfait had proved that his treatment was emergency in nature. The judge made the following findings concerning whether claimant proved his treatment was of an emergency nature such that it constituted an emergency procedure or treatment deemed immediately necessary by the treating health care provider:
Upon the trial of the merits of this case, it was established through the testimony of the treating physician that plaintiff's injuries were of an emergency situation and that there was a very serious risk of neurological deficits, and paralysis if surgery was not done immediately. Dr. Landry, under cross-examination, was clear in his testimony in that he was of the opinion that plaintiff was facing a very serious emergency situation. Counsel for defendant attempted to make some gains by distinguishing between "emergency" and "urgent." However, Dr. Landry was clear that, if you use the word "emergency" or you use the word "urgent," that the plaintiff needed this surgery now.
After considering the testimony of Dr. Landry, the workers' compensation judge concluded the surgery and treatment needed by Parfait was of an emergency nature.
We are mindful that LSA-R.S. 23:1142(C) requires an emergency procedure or treatment that the treating health care provider deems immediately necessary. Although this statute contains a definition section, it does not define the terms "emergency" and "immediately necessary." Black's Law Dictionary defines emergency as:
A sudden unexpected happening; an unforeseen occurrence or condition; perplexing contingency or complication of circumstances; a sudden or unexpected occasion for action; exigency; pressing necessity. Emergency is an unforeseen combination of circumstances that calls for immediate action. *22 Black's Law Dictionary 469 (5th ed.1979). The PDR Medical Dictionary defines emergency as "[a]n unexpected development or happening; a sudden need for action." PDR Medical Dictionary 560 (1st ed.1995). "Immediate" is defined in Black's Law Dictionary as:
Present; at once; without delay; not deferred by any interval of time. In this sense, the word, without any very precise signification, denotes that action is or must be taken either instantly or without any considerable loss of time. A reasonable time in view of particular facts and circumstances of case under consideration....
Black's Law Dictionary 675 (5th Ed.1979).
In his deposition, Dr. Matherne testified that he would not categorize any of the treatment rendered as emergency treatment. Rather, he opined that Parfait's situation was urgent because he displayed symptoms that required surgery. However, he admitted that if the disc was extruded to such an extent that it presented a risk of paralysis, he would consider it an emergency situation.
Dr. Landry explained that Parfait had a very large disc protrusion which was causing severe symptoms, such as muscle spasms and mobility problems. Without immediate surgery, Dr. Landry feared Parfait might develop some permanent neurological damage because of the size and location of the disc problem. He was also concerned that Parfait could develop bladder and bowel problems. In light of these potential developmental problems, Dr. Landry felt Parfait's condition presented an emergency or semi-emergency situation. He opined it was necessary for surgery to be performed immediately to avoid residual problems or disability. Surgery was performed on October 23, 1996, which was within five days of Parfait's initial appointment with Dr. Landry.
After considering the definitions presented and the facts pertaining to Parfait's treatment following the October 15, 1996 MRI, we are unable to find that the workers' compensation judge manifestly erred in finding that Parfait proved his surgery and treatment were of an emergency nature, such that it constituted an emergency procedure or treatment deemed immediately necessary by the treating health care provider as required by LSA-R.S. 23:1142(C). Accordingly, Gulf Island's liability for the medical treatment rendered prior to November 8, 1996, is not limited to $750 for each health care provider.

Gulf Island's Right to a Credit under LSA-R.S. 23:121
Gulf Island contends it is entitled to a credit under LSA-R.S. 23:1212,[5] which provides in pertinent part:
Payment by any person or entity, other than a direct payment by the employee, a relative or friend of the employee, of medical expenses that are owed under this Chapter shall extinguish the claim against the employer or insurer for those medical expenses.... If the employee or the employee's spouse actually pay premiums for health insurance, either as direct payments or as itemized deductions from their salaries, then this offset will only apply in the same percentage, if any, that the employer of the employee or the employer of his spouse paid the health insurance premiums.
An employer is required to furnish medical treatment under LSA-R.S. 23:1203(A). However, an employer is entitled to a credit or an offset against the employer's section 1203 medical expense *23 obligation for medical expenses paid by someone other than the employee or a relative or friend of the employee under LSA-R.S. 23:1212. This credit or offset is not available to the employer for that portion of the medical expense obligation undertaken by a health insurer which corresponds to premium payments for the health insurance coverage made by the employee or by his or her spouse. Principal Mutual Life Insurance Company v. Progressive United Corporation, 28,378 (La.App. 2nd Cir.5/8/96), 674 So.2d 1073, 1075, writ denied, 96-1474 (La.9/20/96), 679 So.2d 436.
Parfait paid a portion of the premiums for group health insurance with Blue Cross Blue Shield of Louisiana (Blue Cross), which insurance apparently covered approximately 80 percent of Parfait's eligible medical expenses up to $5,000 after payment of a $300 deductible. In briefs to this court, the parties stated that Gulf Island paid 60 percent of the premium charges for Parfait's health insurance.
Parfait retained the right to claim from Gulf Island, under LSA-R .S. 23:1203, reimbursement for the medical expenses that were not paid by Blue Cross. Additionally, Parfait retained the right to claim from Gulf Island reimbursement for a percentage of the medical expenses that were paid by Blue Cross, equal to the percentage of Parfait's contributions toward the group health insurance premiums or 40 percent. With respect to the latter point, Gulf Island's LSA-R .S. 23:1203 medical expense obligation to Parfait has not been offset or extinguished pursuant to LSA-R.S. 23:1212. See Principal Mutual Life Insurance Company, 674 So.2d at 1075. With respect to Blue Cross' payments attributable to Gulf Island's percentage of premium contributions, however, Gulf Island's LSA-R.S. 23:1203 medical expense obligation has been offset or extinguished pursuant to LSA-R .S. 23:1212. See Principal Mutual Life Insurance Company, 674 So.2d at 1075.
The employer is responsible for submitting evidence at trial showing payment of the employee's medical expenses by a person or entity other than the employee or a relative or friend of the employee, thereby proving the amount of the credit. Gentile v. Baton Rouge General Medical Center, 95-0348 (La.App. 1st Cir.11/9/95), 665 So.2d 422, 430. Our review of the record revealed the following. Parfait's medical expenses totaled $15,595.41. Of this amount, $12,216.54 was paid by Blue Cross to various health care providers; the remaining $3,378.87 represents amounts paid or to be paid by Parfait toward deductibles or co-payments and amounts disallowed by Blue Cross. Based on this evidence, we conclude that pursuant to LSA-R.S. 23:1212, Gulf Island is entitled to have Parfait's award of medical expenses reduced by $7,329.92 ($12,216.54 × 60%).

AWARD OF FUTURE MEDICAL EXPENSES
Gulf Island asserts the workers' compensation judge erroneously awarded Parfait future medical expenses. A workers' compensation claimant is not entitled to an award for future medical expenses, but the right to claim such expenses is always reserved to him, even though the defendant's liability for them arises only when they are incurred. LSA-R.S. 23:1203; Lester v. Southern Casualty Insurance Company, 466 So.2d 25, 27 (La. 1985); Durand v. National Tea Company, 607 So.2d 573, 576 (La.App. 1st Cir.1992), writ denied, 612 So.2d 101 (La.1993); Campbell v. Luke Construction Company, 543 So.2d 1032, 1039 (La.App. 3rd Cir. 1989). Thus, the workers' compensation judge erred in awarding future medical expenses at this time and that portion of the judgment is reversed. See Anderson v. Biedenharn Bottling Group, 95-646 (La. App. 3rd Cir.11/2/95), 664 So.2d 588, 594-595.

PENALTIES AND ATTORNEY FEES
Gulf Island contends the workers' compensation judge erroneously ruled that *24 Gulf Island was arbitrary and capricious in its denial of Parfait's request for workers' compensation benefits.
LSA-R.S. 23:1201(F) provides for the imposition of a 12 percent penalty on compensation and medical benefits which the employer or insurer fails to pay timely. Augustus, 676 So.2d at 1153. Penalties are not to be assessed when the employee's right to such benefits has been reasonably controverted by the employer or insurer. Augustus, 676 So.2d at 1153-1154. A claim is reasonably controverted if the employer or insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. Allen v. Misco Paper, 27,146 (La.App. 2nd Cir.8/23/95), 660 So.2d 175, 180. An employee has the burden of proving his entitlement to statutory penalties. Breshears v. Security Guard Service, Inc., 537 So.2d 730, 736 (La.App. 1st Cir.1988).
An award of attorney fees is appropriate when the employer and/or insurer has acted arbitrarily, capriciously, or without probable cause in failing to pay workers' compensation benefits. LSA-R.S. 23:1201.2. The applicable statute requires a finding that the defendant acted arbitrarily, capriciously, or without probable cause before attorney fees can be assessed. Augustus, 676 So.2d at 1154. A refusal to pay compensation will not be held to be arbitrary or capricious when this decision is based on competent medical advice. Martin v. H.B. Zachry Company, 424 So.2d 1002, 1008 (La.1982); see Willie v. Balehi Marine, Inc., 525 So.2d 231, 235 (La.App. 1st Cir.1988). A determination of whether a denial of compensation benefits is arbitrary, capricious, or without probable cause depends primarily on the facts existing and known at the time that benefits are denied. Vernon v. Wade Correctional Institute, 26,053 (La.App. 2nd Cir.8/19/94), 642 So.2d 684, 691. The realistic standard for making this determination is whether there was a "reasonable" basis for a dispute as to the employee's entitlement to benefits. Culotta v. Great Atlantic and Pacific Tea Company, 524 So.2d 259, 262 (La.App. 5th Cir.), writ denied, 530 So.2d 88 (La.1988).
These statutes allowing recovery of attorney fees and penalties are penal in nature and must be strictly construed. Martin, 424 So.2d at 1008. Whether the refusal to pay or the discontinuation of benefits warrants the imposition of penalties and attorney fees is a factual question which will not be disturbed upon review in the absence of manifest error. Augustus, 676 So.2d at 1154.
By November 8, 1996, the documentation Gulf Island had on file disclosed the possibility of a job-related injury. Gulf Island's administrative risk manager testified that without Inquiring about Parfait's treatment or obtaining medical records, Gulf Island turned over Parfait's claim to Gulf South Risk Services, a third party administrator. The claims adjuster testified that all the information she had on file indicated Parfait was perhaps suffering from arthritis in his hip due to a motorcycle accident.[6] She had no proof that he sustained a job-related injury. Yet, she never spoke with the job foreman or with Dr. Landry. Admittedly, she considered Dr. Landry's opinion to be of importance. Instead, she relied on the defense attorney to contact these people. Meanwhile, Parfait's claim for workers' compensation benefits was denied.
*25 An insurer or an employer has a duty to investigate and make every reasonable effort to assemble and assess factual and medical information in order to ascertain whether the claim was compensable before denying benefits. Allen, 660 So.2d at 181. This obligation is continuing in nature. Penn v. Wal-Mart Stores, Inc., 93-1262 (La.App. 3rd Cir.6/15/94), 638 So.2d 1123, 1127, writ denied, 94-1835 (La.10/28/94), 644 So.2d 651. Thus, if subsequent to an initial optimistic report, an insurer receives medical information undisputedly showing disability on a particular date, the insurer may not blindly rely on the earlier report and solely on that basis avoid penalties for arbitrary nonpayment of compensation benefits. Penn, 638 So.2d at 1127; see Johnson v. Insurance Company of North America, 454 So.2d 1113, 1119 (La.1984).
After a review of the record in its entirety, we conclude the workers' compensation judge did not manifestly err in finding that Parfait's right to benefits was not reasonably controverted by Gulf Island. Parfait thought the pain he was experiencing was caused by his arthritic condition until the MRI revealed differently. The information relied on by Gulf Island in denying Parfait's claim was that provided initially to it by Parfait. Upon receipt of notice of Parfait's actual condition, Gulf Island was obligated to properly investigate this incident. Once Gulf Island received notice of Parfait's claim for workers' compensation benefits, Gulf Island and its agents did very little to investigate the cause of Parfait's condition. In disregarding its duty to property investigate, the workers' compensation judge found that Gulf Island was arbitrary and capricious in its action or inaction. This finding was supported by the record and is not manifestly erroneous. Accordingly, the workers' compensation judge did not manifestly err in assessing statutory penalties and attorney fees against Gulf Island in the amount of $10,000.
In arguing his case, Parfait requested that this court award additional attorney fees for the defense of this appeal. An appellee who neither appeals nor answers an appeal is not entitled to additional attorney fees for legal services rendered on appeal. LSA-C.C.P. art. 2133; Williams v. Louisiana Indemnity Company, 26,887 (La.App. 2nd Cir.6/21/95), 658 So.2d 739, 743. Since Parfait did not appeal the judgment of the workers' compensation judge, nor did he answer Gulf Island's appeal and request additional attorney fees, he is not entitled to additional attorney fees.[7]

Decree
For the foregoing reasons, the portion of the judgment awarding temporary total disability benefits is amended to award such benefits for that period allowed by LSA-R.S. 23:1221(1)(d), or until March 28, 1997. The portion of the judgment denying Gulf Island's claim for a credit under LSA-R.S. 23:1212 is reversed, and judgment is rendered in favor of Gulf Island recognizing its entitlement to a credit in the amount of $7,329.92 against Parfait's award for medical expenses. That portion of the judgment awarding future medical expenses is reversed. Otherwise, the judgment is affirmed. Costs of this appeal are assessed to the parties equally.
REVERSED IN PART, AMENDED IN PART, AFFIRMED IN PART, AND RENDERED.
NOTES
[1] Although Dr. Matherne felt that Parfait had some disc fragmentation in January 1995, which was not then pinching the nerve and that his condition was not trauma related, he testified that he would defer to Dr. Landry's opinion. Dr. Landry testified that it was impossible for Parfait's disc problems to have been present for any significant length of time. Furthermore, he opined that Parfait could not have worked in his October 18, 1996 condition.
[2] We pretermit a discussion of the issue of the effect and timeliness of filing a claim for extension of the period of temporary total disability under LSA-R.S. 23:1310.3 at this time.
[3] Prior to its amendment in 1997, LSA-R.S. 23:1203(A) provided:

In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal.... The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less.
[4] This statute was amended by 1997 La.Acts No. 1472, § 1.
[5] Extinguishment of an obligation in any manner is an affirmative defense which must be pled in the answer. LSA-C.C.P. art. 1005. Furthermore, to be entitled to a credit under LSA-R.S. 23:1212, a defendant employer must judicially assert its right to the credit. Gentile v. Baton Rouge General Medical Center, 95-0348 (La.App. 1st Cir.11/9/95), 665 So.2d 422, 430. The record indicates that Gulf Island sought a credit for the payment of medical expenses under LSA-R.S. 23:1212 in its amended answer. Therefore, Gulf Island is entitled to have this issue resolved.
[6] Prior to his employment with Gulf Island, Parfait broke his ankle in a motorcycle accident and broke his left hip in a separate automobile accident. Parfait explained that his residual problems from this accident have not prevented him from working or doing anything. During his employment with Gulf Island in May 1996, Parfait missed three days of work associated with a muscle pull in his back which occurred while cutting grass in a ditch. He received chiropractic treatment twice. Before returning to work, Parfait was examined by a doctor of Gulf Island's choice and was cleared to return to work without restrictions.
[7] For this same reason, we pretermit discussion or the issue raised by Parfait in his post argument brief to this court concerning the meaning of the workers' compensation judge's award for statutory penalties and attorney fees.