| .WILLIAM F. KLINE, Jr., Judge Pro Tern.
This is an appeal by a claimant from a judgment dismissing his claim for workers’ compensation benefits. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
Claimant, Joseph J. Catchot, Jr., was employed by RAMCO Construction (“RAMCO”) in its drywall and acoustical ceiling contracting business. Mr. Catchot alleges that sometime between December 1998 and May 1999, he sustained serious injuries to his shoulders while in the course and scope of his employment, resulting in surgery on his right shoulder on June 30, 1999, to correct a torn rotator cuff.[2] Additionally, Mr. Catchot alleges that on June 21, 1999, he sustained a serious injury to his lumbar spine while in the course and scope of his employment, which aggravated a preexisting condition and that resulted in disc protrusions at the L3-L4, L4-L5, and L5-S1 levels.
In August of 1999, Mr. Catchot filed a disputed claim for compensation with the Office of Workers’ Compensation (“OWC”). In response, RAMCO denied that Mr. Catchot suffered any work-related injury. Following a trial on the merits held April 19, 2000, the OWC judge rendered judgment on May 19, 2000, dismissing Mr. Catchot’s claim. No reasons were assigned by the OWC judge. Mr. Catchot appeals this judgment alleging the OWC erred in failing to award him compensation benefits, penalties, and attorney fees.
DISCUSSION
An employee who sustains a personal injury by accident arising out of and in the course and scope of his employment is *107 entitled to collect workers’ compensation from his employer, unless he is otherwise eliminated from benefits under the provisions of Title 23. La. R.S. 23:1031(A). “Accident” means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration. La. R.S. 23:1021(1).
The claimant has the burden of .proof to establish a work-related accident by a preponderance of the evidence. Bruno v. Harbert International Inc., 593 So.2d 357, 361 (La.1992); Parfait v. Gulf Island Fabrication, Inc., 97-2104, p. 5 (La.App. 1st Cir.1/6/99), 733 So.2d 11, 17. A worker’s testimony alone may be' sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident, and, (2) the worker’s testimony is corroborated by the circumstances following the alleged incident. Bruno v. Harbert International Inc., 593 So.2d at 361; Parfait v. Gulf Island Fabrication, Inc., 733 So.2d at 17. Corroboration of the worker’s testimony may be provided by the testimony of fellow workers, spouses or friends, or by medical evidence. Bruno v. Harbert International Inc., 593 So.2d at 361.
In determining whether a worker has shown by a preponderance of the evidence that an injury-causing accident occurred in the course and scope of employment, the trier of fact is expected to focus on the issue of credibility because, absent contradictory circumstances and evidence, a claimant’s testimony is accorded great weight. Bruno v. Harbert International Inc., 593 So.2d at 361; Parfait v. Gulf Island Fabrication, Inc., 733 So.2d at 17. A workers’ compensation judge’s determinations as to whether the claimant’s testimony is credible and whether the claimant has- discharged his burden of proof are factual determinations which will not be disturbed upon review in the absence of manifest error or unless clearly wrong. Id.
In the instant case, in dispute is whether the claimant suffered compensable workers’ compensation injuries to his shoulders and back. The OWC judge obviously concluded that he did not.
The record reflects that Mr. Catchot worked for RAMCO on and off for approximately four years. Specifically, Mr. Cat-chot was employed by RAMCO during the following time periods: July 31, 1995 to February 9, 1996; March 4, 1996 to April 15, 1996; August 26, 1996 to September 15, 1996; October 31, 1996 to March 27, 1998; May 14, 1998 to June 16, 1998; and, October 2, 1998 to June 21, 1999. In 1998, Mr. Catchot also worked for Hardin Construction Company, Inc., from February 13.1998 to April 27,1998, and from August 25.1998 to September 16,1998.
Mr. Catchot testified that his shoulders first began bothering him in late 1997 “toward the end of the cotton mill [job].” At that time, Mr. Catchot testified that he was working with joists that weighed ninety to one hundred pounds and that he did not have! ¿help lifting them onto a table for cutting. Mr. Catchot said that he complained of pain to Mike Latino, the job superintendent, and to “Ronnie,” the foreman. According to Mr. Catchot’s trial testimony, he first sought treatment for his shoulder from Dr. Maumus, “right before the Navy base job.”[3] Mr. Catchot was *108 eventually referred to Dr. Warren R. Bourgeois, III, an orthopedic surgeon, who performed arthroscopic surgery on June 30, 1999, to repair a rotator cuff tear in appellant’s right shoulder. Immediately prior to his June 1999 surgery, appellant testified that he slipped and fell while at work, injuring his lower back.
Ronald Debautte, a RAMCO foreman, testified he recalled Mr. Catchot complaining of shoulder pain during the cotton mill job, which he said was in the early part of 1998, and also subsequently at the 1998 naval base job. Mr. Debautte also stated that when an employee went to his own doctor, as Mr. Catchot did, no written report was made and it was “understood that if something happened, we would back the person up.” However, Mr. Debautte admitted if Mr. Catchot had been injured in an accident on the job, he would have filed a report.
Mr. Catchot testified that he had never had any injury to his shoulders apart from that caused by the “heavy work” he did for RAMCO. He further stated that the first time he complained of his shoulders to his physician, Dr. Maumus, was during the naval base job. Mr. Catchot testified that he first noticed something was wrong with his shoulders when he was working at the navy base. While lifting sheet rock there, he experienced pain and his shoulders would pop, crack, and lock in place.
The only specific incident that Mr. Cat-chot could point to as causing his injury was when he was carrying sheet rock up stairs at the navy base in 1998. When confronted by defense counsel at trial with his prior interrogatory response that his shoulder problem began in January of 1999, Mr. Catchot stated, “That’s when they kept coming back and forth with the same answer messing me up on the dates. I mean, when you confuse somebody, you running here, you running there, you don’t expect somebody to answer you properly, do you?”
Mr. Catchot hesitantly admitted at trial that at the time he first complained of pain to Dr. Maumus, on October 22, 1998, he told her that he had been having pain for about Ra month. Defendant points out that Mr. Catchot was not working for RAMCO in September of 1998, within the month prior to October 22, 1998, when he first reported to Dr. Maumus that he began experiencing pain. Further, defendant directs the court’s attention to the fact that Mr. Catchot worked for Hardin Construction Company from August 25, 1998 through September 16,1998.
Prior to the time he injured his shoulders, Mr. Catchot testified that he had never missed much work and had only injured himself in the leg, some twelve years previously when working in a grain elevator. However, OWC documents were introduced into evidence showing that Mr. Catchot had filed a claim in 1993 against a former employer, Owens Construction Company, Inc., stating that he was exposed to asbestos and claiming that he was having difficulty breathing and was breaking out in hives. That claim was dismissed for failure of Mr. Catchot to appear at a mediation conference.
With regard to his back, Mr. Catchot testified that he reported the injury to his employer on the day it happened, June 21, 1999, and went to see RAMCO’s doctor, Dr. Mímeles. Mr. Catchot testified that he reported to Dr. Mímeles that he had difficulty bending, sleeping, walking and lifting. However, surveillance films were presented to the trial court showing Mr. Catchot engaged in all of these activities with apparent ease, with the exception of sleeping. In fact, one film showed Mr. Catchot transporting his family to a Mardi Gras parade, climbing in and out of a van, twisting in his seat to pass items to the *109 passengers, lifting a child onto his shoulders, bending to collect “throws” from the ground, and assisting another motorist to change a tire.
Further, on cross examination, Mr. Cat-chot seemingly denied injuring his back in 1996 while lifting a boat motor, but later admitted receiving treatment from Dr. Maumus, stating that it was only a pulled muscle in his upper back. However, in response to defense counsel’s question to Mr. Catchot as to whether Dr. Maumus would be wrong if she said his lower back was affected, he stated, “No, I don’t guess she would be wrong if she told you [that].” Mr. Catchot further denied disclosing to Dr. Bobrowski a history of lumbar spondy-lolisthesis or any other spinal condition, and said that if Dr. Bobrowski stated otherwise, he would be lying.
The deposition of Dr. Marianne Mau-mus, an internist, was introduced into evidence. Dr. Maumus testified that she first examined Mr. Catchot on July 29, 1996, | ¿with a complaint of low back pain. She stated that Mr. Catchot reported to her that he injured his back while lifting a boat motor. Dr. Maumus’ examination disclosed parathesia of the hands and legs, and x-rays revealed spondylolysis at the L-5 level and some arthritis of the lumbar spine. Dr. Maumus prescribed an anti-inflammatory and a muscle relaxant. Mr. Catchot was next examined by Dr. Mau-mus on August 5, 1996, at which time she found diffuse tenderness over the lumbar spine and paraspinal muscle areas, and recorded her impression of degenerative joint disease or osteoarthritis. Mr. Cat-chot also complained of back pain to Dr. Maumus in a visit on April 29, 1998. On October 22, 1998, Dr. Maumus testified that Mr. Catchot complained to her of arthritic pain in his back and shoulder, along with headaches, chest, arm, and leg pain. At no time did Mr. Catchot mention any particular injury that he had received, but attributed his complaints to being a construction worker. Dr. Maumus testified that her first diagnosis of Mr. Cat-chot’s condition as osteoarthritis with mild degenerative lumbar changes essentially did not change. Dr. Maumus stated that Mr. Catchot thereafter received care by Dr. Bobrowski and Dr. Bourgeois.
Dr. Joseph Bobrowski, an internist, testified by deposition that he treated Mr. Catchot from January of 1999 until April of 1999, for neck, back, shoulder, and knee pain. Testing performed by Dr. Bobrow-ski revealed no abnormalities. Dr. Bo-browski stated that his assessment was that Mr. Catchot’s pain was out of proportion to the examination findings. It was Dr. Bobrowski’s conclusion that Mr. Cat-chot suffered from arthralgia, which he described as being like arthritis but consisting of only pain and no inflammation. Dr. Bobrowski testified that at no time did Mr. Catchot ever report to him that he had sustained an injury, even though he was questioned in that regard. Furthermore, contrary to Mr. Catchot’s trial testimony, Dr. Bobrowski testified that Mr. Catchot disclosed to him a history of spondylolysis.
Dr. Warren R. Bourgeois, III, an orthopedic surgeon, testified that he began treating Mr. Catchot in May of 1999. Mr. Catchot complained to him of shoulder and knee pain that appeared to have been brought on by carpentry work. It was Dr. Bourgeois’ impression that Mr. Catchot’s condition had been present for some time and had worsened. Dr. Bourgeois diagnosed rotator cuff tendonitis with impingement and subacromial bursitis in both shoulders along with preexisting acromio-clavicular joint |7arthritis. An MRI performed June 11, 1999, revealed a partial rotator cuff tear with chronic tendonitis of the right shoulder, as well as arthritis involving the acromioclavicular joint. The *110 MRI also showed the likelihood of at least a partial rotator cuff tear in the left shoulder.
Dr. Bourgeois testified that arthritis is caused by doing manual labor over a long period of time, while a rotator cuff tear can be caused by a specific injury or an occupational predisposition to a degenerative condition. Dr. Bourgeois related that while no history of a specific injury was given initially, Mr. Catchot later reported in July of 1999 that he had suffered an accident in January of 1999, and asked Dr. Bourgeois to make a note to that effect. Nevertheless, Dr. Bourgeois stated that Mr. Catchot’s condition appeared to be more cumulative in nature.
Dr. Bourgeois performed surgery on June 30, 1999, to repair Mr. Catchot’s right shoulder rotator cuff tear. Thereafter, Mr. Catchot underwent physical therapy. On July 26, 1999, Mr. Catchot was seen by Dr. Bourgeois’ partner and reported falling and possibly injuring his right shoulder. Next, Mr. Catchot was seen on August 10, 1999, with left shoulder pain and an additional surgery was discussed.
On September 20, 1999, Mr. Catchot first reported to Dr. Bourgeois that he had hurt his back on June 21, 1999, and had been referred to another physician for treatment by workers’ compensation. Dr. Bourgeois’ neurological examination was normal; however, x-rays showed a spondy-lolisthesis at L5-S1, which he believed was a degenerative condition. Dr. Bourgeois noted that although Mr. Catchot was adamant in stating to him that he had not previously had a back injury, Dr. Maumus’ notes reflected the contrary. A subsequent November 1999 MRI showed diffuse bulging associated with small disc protrusions at L3-L4 and L4-L5 with bilateral mild facet hypertrophy, and a diffuse bulge associated with a small central disc protrusion at L5-S1. Dr. Bourgeois attributed these conditions entirely to a degenerative situation.
Dr. Bourgeois further stated that if Mr. Catchot had improved following his June 21, 1999 fall at work and then worsened again, he would have expected that Mr. Catchot had experienced some intervening re-injury to the back such as a fall or accident, like Mr. Catchot reported to Dr. Bourgeois’ partner on July 26, 1999. Another fall off his porch was reported by Mr. Catchot in January 2000. Dr. Bourgeois stated lsthat Mr. Catchot would either have to learn to live with his condition or have a surgical stabilization of his spon-dylolisthesis.
Dr. Robert L. Mimeles, an orthopedic surgeon, testified by deposition that he first treated Mr. Catchot on June 24,1999, three days after a slip and fall accident at work. At that time, Mr. Catchot was experiencing low back pain and sciatica. At a subsequent June 29, 1999 visit, Dr. Mi-meles stated that Mr. Catchot’s back condition was markedly better. Dr. Mimeles diagnosed the back condition as a resolving lumbar strain that he expected to heal entirely in six weeks. Dr. Mimeles further stated that Mr. Catchot did not disclose any prior back problems. Dr. Mimeles last saw Mr. Catchot on November 2,1999; he was still complaining of back pain. Dr. Mimeles testified that x-rays had revealed spondylolysis/ spondylolisthesis, which he labeled a congenital defect that did not necessarily correspond to Mr. Catchot’s back pain. Dr. Mimeles stated that his impression of the MRI results was that Mr. Catchot also suffered from degenerative disc disease or the wear and tear of several discs, and arthritis at several levels. It was Dr. Mimeles’ opinion that these conditions were not unexpected degenerative changes for a fifty-year-old man although they may have been exacerbated by the incident at work.
*111 It is well established that a trial court’s finding of fact may not be set aside on appeal unless there is no reasonable factual basis for the findings and the findings are clearly wrong (manifestly erroneous). Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). Furthermore, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although the appellate court may feel its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts. Canter v. Koehring Company, 283 So.2d 716, 724 (La.1973). Where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d at 883.
[9In this case, there are two permissible views of the evidence; i.e., either Mr. Catchot sustained injuries at work that resulted in his back and shoulder conditions or these conditions were the result of degenerative changes or injuries occurring outside his work with RAMCO. The OWC judge found the latter. After a thorough review of the record, we are unable to find manifest error in the credibility evaluations or findings of fact of the trial court. The record on appeal presents a questionable picture of the claimant’s credibility. We cannot say the trial court erred in not giving credence to his reports of workplace injuries.
CONCLUSION
For the reasons assigned herein, the judgment of the trial court in favor of RAMCO Construction, dismissing Mr. Cat-chot’s claims is affirmed. All costs of this appeal are to be borne by appellant, Joseph J. Catchot, Jr.
AFFIRMED.

. Although at the time of trial, claimant had undergone surgery to only one shoulder, he claims that he has a similar injury to his other shoulder that also needs medical attention.

. The job at the naval base was in 1998 according to Ronald Debautte, a RAMCO foreman.