609 So.2d 1109 (1992)
Betty Jane Wilkins DUFOUR, et al., Plaintiffs/Appellants,
v.
Kevin B. HORTON, M.D., Defendant/Appellee.
No. 24208-CA.
Court of Appeal of Louisiana, Second Circuit.
December 2, 1992.
*1110 Nelson & Hammons by John L. Hammons, Shreveport, for plaintiff/appellant, Betty Jane Wilkins Dufour.
Blanchard, Walker, O'Quin & Roberts by Lawrence W. Pettiette, Jr., Shreveport, for defendant/appellee, Kevin B. Horton, M.D.
Pugh, Pugh & Pugh by Robert G. Pugh, Jr., Shreveport, for Louisiana Medical Mut. Ins. Co.
Cook, Yancey, King & Galloway by Charles G. Tutt and Lisa Dunn Folsom, Shreveport, for Patient's Compensation Fund and Oversight Bd.
Before SEXTON, NORRIS and HIGHTOWER, JJ.
NORRIS, Judge.
Plaintiffs, Betty Jane Wilkins Dufour, et al, appeal the trial court judgment, sustaining the objection of the Louisiana Patient's Compensation Fund ("PCF") to their Petition for Settlement and rejecting their demands for settlement approval and the setting of a trial date pursuant to La.R.S. 40:1299.44 C. For the reasons assigned, we affirm.

Factual Background
Although the medical treatment underlying plaintiffs' claim is not at issue in this appeal, the facts, as alleged in the petition, are set out as follows: George L. Dufour was admitted to Schumpert Medical Center on January 5, 1989 with a history of infection to his right great toe. His physician, Dr. Kevin B. Horton, the defendant herein, consulted with Dr. Robert Holladay, an orthopedic surgeon, who recommended surgical amputation of the toe. Surgery was performed the following day, and Dufour was discharged on January 10, 1989. On June 11, 1989, Dufour became ill, vomiting and complaining of gastrointestinal pain. On June 12, 1989, he went into cardiopulmonary arrest while en route to Schumpert Medical Center. Resuscitory efforts proved unsuccessful, and Dufour was pronounced dead at the hospital. The cause of death was listed as probable cardiac arrhythmia with underlying causes including severe coronary arteriosclerosis.
Plaintiffs, Dufour's wife and four major children, assert that Dr. Horton was negligent in failing to order an electrocardiogram prior to Dufour's surgery. They contend that by failing to do so, Dr. Horton denied himself and the other treating physicians the opportunity to gather valuable information regarding Dufour's cardiovascular condition.

Procedural History
On August 28, 1989, plaintiffs filed a *1111 Petition for Medical Review Panel[1] with the Commissioner of Insurance[2] pursuant to the Medical Malpractice Act ("the Act"). La.R.S. 40:1299.41 et seq. By letter dated August 29, 1989, the Office of the Commissioner of Insurance notified plaintiffs' attorney that Dr. Horton was not covered by the Patient's Compensation Fund.
Accordingly, on November 2, 1989, plaintiffs filed their Petition in the First Judicial District Court, asserting a wrongful death/medical negligence claim against Dr. Horton.
On December 7, 1989, Dr. Horton filed an Exception of Prematurity, contending that he was a "qualified health care provider" under the Act and, as such, was entitled to a review of plaintiffs' claim by a medical review panel. Dr. Horton attached to the exception a copy of a Certificate of Enrollment issued by the Office of the Commissioner of Insurance, certifying him as an enrollee. The certificate shows that for the period of time encompassing the alleged malpractice (January 1-15, 1989), Dr. Horton had paid all surcharges required by the Act and had maintained the requisite professional liability insurance coverage in the form of a "claims made" policy issued by Louisiana Medical Mutual Insurance Company ("LAMMICO"). The certificate does not designate Dr. Horton as an enrollee in the Fund on any date after January 15, 1989.
Dr. Horton's dilatory exception was argued before then District Judge Stewart who sustained it and dismissed the suit without prejudice. Judge Stewart's judgment, dated March 6, 1990, further ordered that:
the Office of the Commissioner of Insurance, State of Louisiana, receive and file plaintiffs' petition for Medical Review Panel and process the claim as Kevin Horton, M.D. is held to be a qualified health care provider eligible for panel review and a member of the Louisiana Patient's Compensation Fund[.]
Following this judgment, plaintiffs and Dr. Horton entered into settlement negotiations. The claim against Dr. Horton was apparently settled for $17,500 as the record contains a copy of a check for that amount issued to plaintiffs by Dr. Horton and bearing the language "full and final settlement." The check, dated July 5, 1991, was endorsed by all plaintiffs and apparently cashed on August 2, 1991.
On August 26, 1991, plaintiffs filed a Petition for Settlement, citing as authority section 40:1299.44 C(1) of the Act. In this petition, plaintiffs' sought court approval of their settlement with Dr. Horton and sought to reserve any causes of action they "may have against the Louisiana Patients' Compensation Fund and LAMMICO." The Petition for Settlement also demanded the PCF pay to plaintiffs $350,000.00 plus legal interest. Moreover, plaintiffs submitted an order, which the court signed, ordering the PCF and LAMMICO to appear and show cause why a date for trial should not be set to determine "the amount for which the Louisiana Patients' Compensation Fund and LAMMICO are liable to plaintiffs[.]"
On September 13, 1991, the PCF filed a Petition of Intervention and an Objection to the Petition for Settlement, contending that Dr. Horton was not a qualified health care provider under the Act. The PCF also alleged that it had no previous opportunity to present evidence or argue its position. On September 30, 1991, LAMMICO filed a Response as amicus in Support of the PCF. LAMMICO attached to its response a copy of the professional liability insurance policy issued to Dr. Horton. The policy, written in a "claims made" form, bears an expiration date of January 15, 1989.
On September 30, 1991, Judge C.J. Bolin, Jr., then temporary successor of Judge Stewart, held a hearing on plaintiffs' rule *1112 to show cause; he denied the rule by written opinion dated October 3, 1991. Judge Bolin signed the final judgment on December 11, 1991, sustaining the PCF's Objection to Petition of Settlement and rejecting plaintiffs' demand for settlement approval and request for the setting of a trial date.
In his written opinion, Judge Bolin stated that Dr. Horton was not entitled to the benefits of the Act because he was not insured at the time plaintiffs' claim was filed and thus was not a qualified health care provider at that time. Therefore, the court was without authority to approve the settlement. With regard to Judge Stewart's earlier finding to the contrary, Judge Bolin noted that both the parties and the court had missed the significance of the "claims made" policy. Judge Bolin further stated that Judge Stewart's Order was not binding upon the PCF or the Office of the Commissioner of Insurance since neither was made a party to the suit or provided with notice of the hearing.
Plaintiffs appeal Judge Bolin's judgment rejecting their demands to approve the settlement and set a trial date pursuant to section 40:1299.44 C of the Act. Plaintiffs assert as error: (1) the trial court's failure to approve the settlement between plaintiffs and Dr. Horton, and (2) the trial court's finding that Dr. Horton was not a qualified health care provider under the Act, notwithstanding Judge Stewart's earlier finding to the contrary. Dr. Horton filed an answer to the appeal for the sole purpose of denying plaintiffs' contention that he had admitted medical malpractice. The PCF filed a response to the appeal. LAMMICO filed an amicus curiae brief.

Discussion
The Petition for Settlement expressly relies on the authority of the Medical Malpractice Act, 40:1299.44 C. This section sets forth the procedure for judicial approval of settlements in a medical malpractice case and for recovery by a claimant against the PCF. In relevant part, section 40:1299.44 C states:
If the insurer of a health care provider or a self-insured health care provider has agreed to settle its liability on a claim against its insured and claimant is demanding an amount in excess thereof from the patient's compensation fund for a complete and final release, then the following procedure must be followed:
(1) A petition shall be filed by the claimant with the court in which the action is pending ... seeking (a) approval of an agreed settlement, if any, and/or (b) demanding payment of damages from the patient's compensation fund.
(emphasis added).
The Medical Malpractice Act must be strictly construed. Williams v. St. Paul Ins. Co., 419 So.2d 1302 (La.App. 4th Cir.), cert. denied 423 So.2d 1182 (1982). Thus, under this provision, the health care provider and his insurer must have agreed to settle their liability on a claim as a prerequisite to judicial approval of the settlement and to any recovery of claimant from the PCF. Ewing v. Aubert, 566 So.2d 616 (La.1990).
The settlement agreement in the instant case was executed between plaintiffs and Dr. Horton only. No insurer was involved in the agreement. In fact, in the Petition for Settlement, plaintiffs seek to reserve any rights they have against the alleged insurer, a procedure not contemplated by the Act. Thus, if this provision of the Act is to apply to the present case, it must be because Dr. Horton was a self-insured health care provider.
Section 40:1299.42 A, E of the Act provides that in order to qualify under the Act as a self-insured health care provider, the health care provider must, in addition to paying the appropriate surcharges, file with the board proof of financial responsibility by:
depositing with the board one hundred twenty-five thousand dollars in money or represented by irrevocable letters of credit, federally insured certificates of deposit, bonds, securities, cash values of insurance, or any other security approved by the board[.]
La.R.S. 40:1299.42 E(1).
The record is devoid of evidence that Dr. Horton is, or ever was, a self-insured *1113 health care provider. In fact, no one claims Dr. Horton to be a self-insured health care provider. Therefore, plaintiffs' Petition for Settlement does not relate to a settlement executed by a self-insured health care provider or the insurer of a health care provider. Consequently, section 40:1299.44 C does not authorize the court to approve the settlement or set a trial date to determine the liability of the PCF and LAMMICO. The trial court did not err in refusing to approve the instant settlement agreement executed between plaintiffs and Dr. Horton or to set the requested trial date.
In their second assignment of error, plaintiffs assert that the trial court erred in finding that Dr. Horton was not a qualified health care provider under the Act. This assignment is based upon the trial court's reasons for judgment rather than the judgment itself. Appellate review, however, lies only from the court's judgment, not the reasons therefor. Hardin v. Munchies Food Store, 510 So.2d 33 (La.App. 2d Cir. 1987), and cases cited therein. See also La.C.C.P. art. 1918. Regardless of what may have been a trial court's reasons for rendering judgment, if the judgment is correct, it should be affirmed. Caldwell v. Second Judicial Dist. IDB, 475 So.2d 96 (La.App. 2d Cir.), writ denied 477 So.2d 1126 (1985). Thus, plaintiffs' second assignment of error is not properly before us insofar as it does not raise an error in the lower court's judgment. See Hardin, supra; Kennedy v. Lafleur's Fried Chicken, 571 So.2d 216 (La.App. 3d Cir.1990).
For the reasons set forth above, the trial court's judgment, rejecting plaintiffs' demand for settlement approval and request for setting a trial date to determine the liability of the Louisiana Patient's Compensation Fund and the Louisiana Medical Mutual Insurance Company is affirmed. The costs of this appeal are assessed to plaintiffs.
AFFIRMED.
NOTES
[1] Although plaintiffs' Petition for Medical Review Panel is undated, the acknowledgment letter sent by the Office of the Commissioner of Insurance indicates that the Petition was filed on August 28, 1989.
[2] At the time of filing, the PCF was administered by the Office of the Commissioner of Insurance. Since that time, the Act has been amended to create the Patient's Compensation Fund Oversight Board which currently administers the Fund.