809 So.2d 421 (2001)
Kevin Charles WHIDDON
v.
LIVINGSTON PARISH COUNCIL.
No. 2000 CA 1349.
Court of Appeal of Louisiana, First Circuit.
September 28, 2001.
Writ Denied January 25, 2002.
*423 Kevin Charles Whiddon, Independence, Pro se Plaintiff/Appellant.
Stephen D. Enright, Jr., Metairie, Counsel for Defendant/Appellee Livingston Parish Council.
Before: FITZSIMMONS WEIMER, and DOWNING, JJ.
WEIMER, Judge.
This matter is on appeal following a decision of the workers' compensation judge in which the judge ordered the defendant to pay plaintiff's attorney fees in the amount of $3,000.00. The judge noted that plaintiff was currently receiving weekly benefits; therefore, that portion of the *424 claim relating to benefits was no longer at issue.
Plaintiff appeals, alleging the workers' compensation judge erred in failing to find defendants arbitrary and capricious for denying and ignoring a request for change of physician and treatment; in failing to order defendant to pay for all medical treatments, medicine, and mileage; in ordering that defendant had to pay only $750 to Dr. Louis Provenza; in awarding attorney fees without also awarding statutory penalties; in awarding claimant's prior attorney fees in the amount of $3,000.00; in allowing Dr. John Schuhmacher's report into evidence without having complied with LSA-R.S. 23:1317.1; and in failing to recognize claims for loss of consortium for his spouse and children.
Defendants answered the appeal contesting the award of attorney fees. Otherwise, defendants seek to have the judgment affirmed. For the following reasons, we affirm in part and reverse in part.

FACTS AND PROCEDURAL BACKGROUND
Review of the record indicates Mr. Whiddon was injured in the course and scope of his employment with the Livingston Parish Police Jury on September 3, 1996. He was cutting bushes on a canal bank when he stepped on something causing him to slip and fall. In an attempt to avoid falling into the canal, he twisted his neck and back. He was seen at the emergency room of North Oaks Medical Center in Hammond and released. Two days later Mr. Whiddon experienced severe pain and consulted his family doctor who scheduled an MRI of the cervical spine. He was eventually referred to Dr. Thomas Collum, a neurosurgeon. Mr. Whiddon executed a choice of physician form naming Dr. Collum as his treating physician. He was treated conservatively for a period of time, but when that failed, Dr. Cullom performed a two-level anterior cervical discectomy and fusion on November 1, 1996. He continued treatment with Dr. Collum until he was released to return to his former position on July 2, 1997.
The Livingston Parish Council directed Mr. Whiddon to return to work on July 28, 1997. He reported to work that day but only stayed for a short period of time before he left because of the pain he was experiencing. Mr. Whiddon felt that he could not return to his former duties because of the back pain which had increased over time. He did not agree with Dr. Cullom's assessment that he could return to work and underwent an independent medical examination conducted by Dr. Thomas Flynn. Dr. Flynn concurred with Dr. Collum's opinion that the claimant should be released to his ordinary occupation.[1]
Mr. Whiddon began seeing Dr. Louis Provenza, a neurosurgeon, on July 31, 1997, without defendant's prior approval. Defendant refused to approve treatment by Dr. Provenza because Mr. Whiddon had already chosen Dr. Cullom as his treating physician. It was Dr. Provenza's opinion that Mr. Whiddon was not able to return to his former employment.
On August 8, 1997, Mr. Whiddon filed a disputed claim for compensation alleging he was still unable to work and his compensation benefits had been terminated. The defendants filed an answer stating that all benefits due Mr. Whiddon had been paid and that claimant had been released *425 to return to work by his own treating physician and by another physician who performed an independent medical evaluation. The case was scheduled for trial a number of times and continued on more than one occasion by joint motion of the parties. Trial dates were also continued at the request of each party individually. During that interval the parties participated in mediation and were reportedly close to settling the entire matter before negotiations broke down.
In light of the conflicting medical opinions, the parties jointly requested that an independent medical examination be conducted through the Office of Workers' Compensation pursuant to Louisiana Revised Statute, Title 23, section 1123. Upon completion of this examination on June 16, 1998, Dr. John Schuhmacher recommended that a psychological pain evaluation be completed and that Mr. Whiddon be given vocational counseling and placed in a sedentary or light occupation. Dr. Schuhmacher did not recommend lumbar surgery, as it was his opinion that a discectomy, with or without fusion, would not lessen Mr. Whiddon's complaints; Mr. Whiddon's physical limitations following a lumbar spine fusion would be the same or more restricted. Despite this recommendation the record reflects that Mr. Whiddon continued to consult Dr. Provenza who performed lumbar surgery without requesting authorization for the surgery from the defendants.
The matter went to trial on March 15, 2000. Mr. and Mrs. Whiddon testified. Additional evidence was submitted in the form of medical records, reports, and the deposition of Dr. Provenza. The matter was taken under advisement and the parties submitted post trial memoranda. The workers' compensation judge issued written reasons for judgment and a judgment in the matter on March 31, 2000. This appeal followed.

DISCUSSION
In order to recover workers' compensation benefits, a claimant must prove that a work-related accident occurred. LSA-R.S. 23:1031; Middleton v. International Maintenance, 95-0238, p. 5 (La.App. 1 Cir. 10/6/95), 671 So.2d 420, 423-424, writ denied, 95-2682 (1/12/96), 667 So.2d 523. In addition, the claimant must establish the accident caused the injury and the injury caused the disability. Kennedy v. Johnny F. Smith Trucking, 94-0618, p. 6 (La.App. 1 Cir. 3/3/95), 652 So.2d 526, 530. An employee in a workers' compensation action has the burden to establish a causal link between the work-related accident and the subsequent disabling condition. The causal connection between the disability and the accident must be established by a preponderance of the evidence. Kennedy, 94-0618 at 7, 652 So.2d at 530.
The Louisiana Supreme Court in Seal v. Gaylord Container Corporation, 97-0688, pp. 4-5 (La.12/02/97), 704 So.2d 1161, 1164, reiterated that the standard of appellate review in workers' compensation cases is that factual findings are subject to the manifest error or clearly wrong standard. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556; Smith v. Louisiana Department of Corrections, 93-1305, p. 3 (La.2/28/94), 633 So.2d 129, 132; Freeman v. Poulan/Weed Eater, 93-1530, p. 4 (La.1/14/94), 630 So.2d 733, 737. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Banks, 96-2840 at 7-8, 696 So.2d at 556; Freeman, 93-1530 at 5, 630 So.2d at 737-38; *426 Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Banks, 96-2840 at 8, 696 So.2d at 556; Stobart, 617 So.2d at 882. "Thus, `if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if [sic] convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" Banks, 96-2840 at 8, 696 So.2d at 556 (quoting Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106, 1112 (La.1990)).
Mr. Whiddon argues on appeal that the workers' compensation judge erred when he did not find the denial of approval of a change of physician to Dr. Provenza arbitrary and capricious when he failed to award an amount for medical expenses, prescription charges, and mileage to seek medical treatment. Although Mr. Whiddon testified that his former attorney had sent a letter requesting a change of physician, no such request appears in the record. Both Mr. and Mrs. Whiddon testified at trial that they were unaware of any request to have the employer approve the surgery performed by Dr. Provenza prior to the surgery. They were advised to submit the claim to their medical insurance carrier as opposed to the workers' compensation carrier. Additionally, there is no indication that Mr. Whiddon requested a hearing or in any way contested the denial of approval following the refusal of the employer to approve a change in treating physicians. He simply continued to see Dr. Provenza using his medical insurance.
Pursuant to LSA-R.S. 23:1121(B) a covered employee has the right to choose one physician in any field or specialty and the treatment will be paid for by the employer. After this selection is made, the employee must obtain the employer's consent to receive treatment from another physician in that same field or specialty if that treatment is to be paid by the employer. Moore v. Sanderson Farms, Inc., 95-2042, pp. 9-10 (La.App. 1 Cir. 5/10/96), 674 So.2d 478, 484, writ denied, 96-1399 (9/13/96), 679 So.2d 106.
Mr. Whiddon elected to have surgery performed by Dr. Provenza even though he was aware that Dr. Schuhmacher specifically recommended against surgery. He chose surgery over the recommended alternatives suggested by Dr. Schuhmacher and did so without prior authorization from the workers' compensation carrier. Mr. Whiddon's request for reimbursement of medical expenses in connection with Dr. Provenza's treatment consisted of a listing of dates and amounts representing co-payments for medical treatment and prescription medication as well as mileage charges. There were no receipts offered to substantiate the dates of treatment or the amounts of charges incurred. Considering all of the facts and circumstances, we find the workers' compensation judge was not manifestly erroneous in his denial of Mr. Whiddon's claim for coverage of the unauthorized medical treatment.
Mr. Whiddon contests the validity of the reasoning of the workers' compensation judge that the sum of $750 represents the amount owed to Dr. Provenza. While the judge included a discussion regarding this ruling in the reasons for judgment, the judgment from which Mr. Whiddon appeals does not include that award. This court is limited to a review of the judgment being appealed. The argument regarding the $750 fee relates to the trial court's reasons for judgment. Appellate review is only of the court's judgment, *427 not the reasons therefor. This assignment of error is not properly before us insofar as it does not raise an error in the lower court's judgment. See Dufour v. Horton, 609 So.2d 1109, 1113, (La.App. 2 Cir.1992).
Under Louisiana law, attorney fees are not allowed except where authorized by statute or contract. Washington v. Lyon's Specialty Company, 96-0263, p. 8 (La.App. 1 Cir. 11/8/96), 683 So.2d 367, 373; writ denied, 96-2944, (1/31/97), 687 So.2d 408. Statutes allowing recovery of attorney fees and penalties are penal in nature and must be strictly construed. Martin v. H.B. Zachry Company, 424 So.2d 1002, 1008 (La.1982). Whether the refusal to pay compensation benefits or the discontinuation of those benefits warrants the imposition of penalties and attorney fees is a factual question which will not be disturbed upon review in the absence of manifest error. Parfait v. Gulf Island Fabrication, Inc., 97-2104, pp. 16-17 (La. App. 1 Cir. 1/6/99), 733 So.2d 11, 23-24; Augustus v. St. Mary Parish School Board, 95-2498, p. 13 (La.App. 1 Cir. 6/28/96), 676 So.2d 1144, 1154.
An employer or insurer who discontinues payment of claims due under the workers' compensation statute, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims. LSA-R.S. 23:1201.2. A refusal to pay compensation will not be held to be arbitrary or capricious when this decision is based on competent medical advice. Martin, 424 So.2d at 1008; Parfait, 97-2104 at 16, 733 So.2d at 24. A determination of whether a denial of compensation benefits is arbitrary, capricious, or without probable cause depends primarily on the facts existing and known at the time that benefits are denied not facts that come to light subsequently. Parfait, 97-2104 at 16, 733 So.2d at 24; Vernon v. Wade Correctional Institute, 26,053, p. 9 (La. App. 2 Cir. 8/19/94), 642 So.2d 684, 691. The realistic standard for making this determination is whether there was a "reasonable" basis for a dispute as to the employee's entitlement to benefits. Parfait, 97-2104 at 16, 733 So.2d at 24; Culotta v. Great Atlantic and Pacific Tea Company, 524 So.2d 259, 262 (La.App. 5 Cir.), writ denied, 530 So.2d 88 (1988).
When the hearing officer commits legal error by applying the incorrect legal standard or principle, the court is required to determine the facts de novo from the entire record and render a decision on the merits. Augustus, 95-2498 at 13, 676 So.2d at 1154; Gentile v. Baton Rouge General Medical Center, 95-0348, (La.App. 1 Cir. 11/9/95); 665 So.2d 422, 431.
In reasons for judgment, the workers' compensation judge found that defendant was arbitrary and capricious in discontinuing Mr. Whiddon's benefits without allowing him to take advantage of the provision of LSA-R.S. 23:1121(D) and awarded attorney fees based on LSA-R.S. 23:1201.2 for the improper discontinuance of benefits. We find this ruling is manifestly erroneous.
Review of the record indicates Mr. Whiddon's treating physician, Dr. Collum, indicated on April 11, 1997, that he had probably reached maximum medical benefit and recommended that a functional capacity evaluation be done. He released Mr. Whiddon to return to work on July 2, 1997. At that time he indicated, "[I]n the absence of any physical findings, and the refusal to give full effort for physical therapy and the functional capacity evaluation, I see no other options at this point than to release him back to his usual and ordinary occupation."
Additionally, the record reveals that an independent medical examination was performed *428 by Dr. Thomas Flynn, who reported his findings to the insurer by letter dated June 12, 1997. Dr. Flynn agreed that Mr. Whiddon could return to work. He stated:
"This gentleman has no objective findings on examination. He has no evidence on examination of any problem which would prevent him from resuming his usual and customary occupation as a heavy equipment operator. The patient is obviously very anxious but nevertheless has no evidence of any significant residual as a result of his two-level ACDF.
On review of his lumbar MRI examination, there is evidence of degenerative change at L-5 but no evidence of disc protrusion, nerve root compression or other structural abnormality which could be attributed to the incident of last year, and nothing apparent which would indicate that the patient needs surgical intervention or represents a contraindication to his return to his job as an operator."
The record does not support a finding that the employer and/or insurer acted in an arbitrary or capricious manner in discontinuing Mr. Whiddon's benefits effective the end of July 1997. The workers' compensation judge awarded attorney fees based on LSA-R.S. 23:1201.2 which provides for attorney fees if the discontinuance of benefits is found to be arbitrary and capricious. The workers' compensation judge indicated that the claimant was not afforded the opportunity to see a physician at his expense before his benefits were terminated, citing LSA-R.S. 23:1121(D).[2] However, in April 1997, Dr. Collum, claimant's treating physician, indicated he believed Mr. Whiddon had reached maximum medical benefit. Mr. Whiddon was sent to Dr. Flynn for an independent medical examination which was completed in June 1997. By July 2, 1997, when Dr. Collum released Mr. Whiddon to return to work, both he and Dr. Flynn, the doctor who performed the independent medical examination, agreed that Mr. Whiddon could return to work. Benefits were not discontinued until July 28, 1997. The record further indicates that Mr. Whiddon first consulted Dr. Provenza on July 31, 1997, after his benefits had been discontinued. Given the fact that benefits continued for almost a month following the physician's release to return to work, we do not find the employer was arbitrary and capricious in discontinuing benefits to Mr. Whiddon effective July 28, 1997. The award of attorney fees was improper under the facts and circumstances of this case; thus the portion of the judgment awarding attorney fees is reversed.
Claimant contests the decision of the workers' compensation judge approving an award of an attorney fee to claimant's former attorney under the provisions of LSA-R.S. 23:1143(2). Review of the record indicates the order approving the attorney fee was signed by the court on April 8, 1999. That order was not before the court at the trial of this matter and was not addressed by the court nor included in the judgment which is being appealed. This issue is not properly before the court of appeal.
*429 Mr. Whiddon assigns error to the fact that the trial judge allowed Dr. Schuhmacher's report into evidence notwithstanding the fact that the report had not been certified in accordance with LSA-R.S. 23:1317.1. The trial judge appointed Dr. Schuhmacher to perform an independent medical examination of Mr. Whiddon in response to a joint request by the parties. LSA-R.S. 23:1123. The examination was completed on June 17, 1998, and Dr. Schuhmacher submitted his findings to all concerned in a detailed report of the examination. Review of the report indicated that a portion of the tape was blank. In response to a joint request by the attorneys, Dr. Schuhmacher, after a review of his entire file on Mr. Whiddon, submitted a letter answering the question which had been omitted in the original report due to the blank portion of the type.
Dr. Schuhmacher's report and subsequent letter were entered into evidence at the trial of the matter without objection. On appeal, Mr. Whiddon complains that the report was improperly admitted because Dr. Schuhmacher did not comply with the provisions of LSA-R.S. 23:1317.1.[3] Mr. Whiddon challenges the report submitted because Dr. Schuhmacher failed to include a written certification authenticating his report and did not timely submit the entire report within 30 days after performing the independent medical examination.
In essence, Mr. Whiddon's challenge to Dr. Schuhmacher's report is that it lacks authenticity. The requirement that evidence be authentic is a rule of evidence found in Louisiana Code of Evidence article 901. However, in worker's compensation cases, although all findings of fact must be based on competent evidence, the workers' compensation judge is not bound by technical rules of evidence or procedure, other than as provided in the Louisiana Workers' Compensation Law. LSA-R.S. 23:1317(A). However, if the authenticity requirement of LSA-C.E. art. 901 were applicable to this case, all of the rules of evidence would apply, including the contemporaneous objection requirement contained in LSA-C.E. art. 103(A)(1). Because the record indicates that Mr. Whiddon made no objection when Dr. Schuhmacher's report was filed into evidence, we conclude that, if the rules of evidence were applicable, Mr. Whiddon waived his right to object to the report's authenticity. Ross v. Remediation Services of Louisiana, 97-2102, pp. 3-4 (La. App. 1 Cir. 5/15/98), 714 So.2d 218, 220.
Furthermore, in Spreadbury v. State Depatment of Public Safety, 99-0233 (La. App. 1 Cir. 11/5/99), 745 So.2d 1204, this court recognized a more relaxed evidentiary standard in an administrative hearing appeal as established by the Supreme Court in Chaisson v. Cajun Bag & Supply Co., 97-1225 (La.3/4/98), 708 So.2d 375. The court in Chaisson concluded that in order for hearsay evidence to qualify as "competent evidence," the evidence must have "some degree of reliability and trust-worthiness" and be "the type that reasonable persons would rely upon." The court further held that "[t]his determination must be made on a case-by-case basis under the particular facts and circumstances." Chaisson, 97-1225 at 12-13, 708 So.2d at 382. Dr. Schuhmacher's report appears reliable and trustworthy and is of the type of evidence upon which reasonable persons would rely. Therefore, this assignment of error is without merit.
Mr. Whiddon also assigns as error the failure of the trial judge to recognize *430 the loss of consortium claims of his spouse and children. He also lists as error the failure of the trial judge to award an amount of damages for loss of enjoyment of life, loss of earning capacity, and mental anguish which he suffered. Because this is a workers' compensation case and not a tort claim, the items of damages listed are not compensable. The worker is limited to recovery of those benefits specifically recognized under the workers' compensation statute. See LSA-R.S. 23:1032(A). This assignment lacks merit.

CONCLUSION
Following a careful review of the record including the transcript of the trial and the exhibits introduced into evidence, we find the workers' compensation judge correct in all findings except the award of attorney fees for discontinuance of benefits. The judgment is reversed on the issue of attorney fees. Costs of appeal are assessed to Mr. Whiddon.
AFFIRMED IN PART; REVERSED IN PART.
DOWNING, J., concurs without reasons.
NOTES
[1] Dr. Flynn, a colleague of Dr. Collum, recommended a CT scan with contrast however, the insurer refused to authorize it since Dr. Flynn was not the treating physician. Dr. Cullom did not believe the test was necessary and refused to request that it be done. According to Mr. Whiddon, Dr. Cullom told him to seek treatment elsewhere.
[2] LSA-R.S. 23:1121(D) provides:

After all examinations have been conducted but prior to any order directing the injured employee to return to work, the employee shall be permitted, at his own expense, to consult with and be examined by a physician of his own choosing. Such report shall be considered in addition to all other medical reports in determining the injured employee's fitness to return to work. Should disagreement exist, after such consultation and examination, as to the fitness of the employee to return to work, the provisions of R.S. 23:1123 shall be followed.
[3] LSA-R.S. 23:1317.1(B) provides as follows:

B. An examiner performing independent exams pursuant to R.S. 23:1123 shall be required to prepare and send to the office a certified report of the examination within thirty days after its occurrence.