|, CARAWAY, J.
The plaintiffs in this personal injury suit received injuries in a one-vehicle accident while returning to their home in Monroe from a job in south Louisiana. The accident occurred when the company van, driven by a third employee, hydroplaned off an interstate highway and into a tree. During the three-month work project, the employer had provided the van to the employees who traveled to and from the job site. A jury found one employee, who was guaranteed a forty-hour work week, to have been within the course and scope of his employment and rejected his tort claim. A second employee, who was an hourly wage-earner and not entitled to compensation for the trip, was awarded tort damages for the injuries he received in the accident upon the determination that he was outside the course and scope of his employment. Finding that the Worker’s Compensation Act applies to immunize the employee/driver and the employer’s insurer from tort liability, we affirm in part and reverse in part.

Facts

On July 26, 2001, Giddis Leon Temple (“Leon”) and his son, Steven, were equipment operators for Hartec Corporation, a Baton Rouge, Louisiana general construction company. Edward Sherman worked as a pipe layer for Hartec. The three Hartec employees from the Monroe, Louisiana area formed part of the “Monroe crew” which had been working a job in Mandeville, Louisiana, for approximately three months. Because of the 275-mile distance between the job site and their homes, the Hartec employees remained in Mandeville during the week, generally working | Jour, ten-hour days. For their overnight accommodations, Hartec provided the employees a substantially-furnished apartment. Additionally, for travel to and from their homes and the apartment,[1] Har-tec provided the crew a company van to use for the duration of the project.
At no time during the Mandeville project had any of the three employees driven their own vehicles to the job site. Steven, an hourly-wage employee, was not paid for travel time. Leon was guaranteed a forty-hour work week even if the work time in Mandeville was shortened due to bad weather. Hartec maintained the van and paid for fuel and insurance for the vehicle. Only Sherman and Leon were authorized to drive the van and would generally split the driving responsibilities during each trip. In compliance with company policy prohibiting personal use of the van, Leon kept the van parked at his home on the weekends. In the early morning hours of every Monday morning, Leon and Steven would usually pick Sherman up at his home and the three would drive to Mande-ville in time for work at 7:00 a.m. Normally, the three would return to the Monroe area after working hours on Thursday evenings unless weather necessitated work on Fridays.
On Thursday morning, July 26, 2001, inclement weather prevented the three men from going to the job site. Work was canceled for the day at approximately 7:00 a.m. After receiving their paychecks, the three men departed for Monroe in the rainy weather. Sherman drove the van, Leon sat in the front passenger seat and *79 Steven sat behind Sherman. During the trip, laboth Leon and Steven fell asleep as the rain persisted at varying intensity. At approximately 10:00 a.m., the van neared the Brookhaven, Mississippi exit on Interstate 55. Although the rain had then subsided, the vehicle encountered a puddle of water on the highway that caused it to hydroplane off of the roadway into a tree. The impact caused the van door to open, throwing both Steven and Leon outside the van. Both sustained injuries as the result of the accident.
Steven and Leon and his wife, Nellie, instituted this action against Sherman and Clarendon America Insurance Company (“Clarendon”), Hartec’s automobile liability insurer, seeking damages for the employees’ injuries. The Louisiana Worker’s Compensation Corporation intervened in the suit seeking reimbursement or recovery of worker’s compensation benefits paid to both plaintiffs.
Following trial, the jury found Sherman 100% at fault in causing the accident but denied Leon’s tort damage claim after finding him to have been within the course of his employment with Hartec. Nevertheless, the jury awarded Nellie Temple loss of consortium damages in the amount of $2,500, and the trial court awarded Leon recovery of the costs for his expert witnesses. Steven was awarded $225,000 in general and special damages after the jury determined that he was not within the course of his employment with Hartec at the time of the accident. All parties sought either a new trial and/or a judgment notwithstanding the verdict on the inconsistent jury verdict. After the trial court denied all motions, both sides to the dispute appealed.
| 4Piscussion
Under the Workers’ Compensation Act, employers are responsible for compensation benefits to employees only when the injury results from an accident “arising out of and in the course of his employment.” La. R.S. 23:1031; McLin v. Industrial Specialty Contractors, 02-1539 (La.7/2/03), 851 So.2d 1135. The employer and the negligent employee are given immunity from civil liability for employment-related accidents covered by the Act. La. R.S. 23:1032. Generally, injuries sustained by an employee while traveling to and from work are not considered to have occurred within the course of his employment, and thus, are not compensable under the Act. One exception to the going-and-coming rule set forth by the jurisprudence occurs when “the employer had interested himself in the transportation of the employee as an incident to the employment agreement either by contractually providing transportation or reimbursing the employee for his travel expenses.” McLin, supra, and cases cited in fn. 1.
A claim by the spouse of an injured worker for loss of consortium is barred when the injury is covered by workers’ compensation. Whiddon v. Livingston Parish Council, 00-1349 (La.App. 1st Cir.9/28/01), 809 So.2d 421, writ denied, 01-2893 (La.1/25/02), 807 So.2d 837.
In Phillips v. Epco Carbon Dioxide Products, Inc., 35,740 (La.App.2d Cir.2/27/02), 810 So.2d 1171, writ denied, 02-0979 (La.6/7/02), 817 So.2d 1146, this court had the occasion to review the jurisprudential development of this exception to the going-and-coming rule. We cited several cases where employees were injured while being transported from 15work in company-owned vehicles, thus placing the employee within the coverage of the Act. Whether the employer was paying the employee an allowance for the actual mileage of the specific trip or a fixed sum for a monthly travel allowance, as was the case in Phillips, was not critical to our determination in that case that the employer had *80 interested himself in the transportation. Additionally, we determined that employer control over the employee during the commute to or from work was not the emphasis of the jurisprudence in fashioning this exclusion. Instead, the exclusion “rests entirely on the fact that the employer has taken an interest in the transportation of the employee as an inducement to the employment agreement.” Id. at 1175.
In Boyte v. Ward North American Insurance Co., 85,929 (La.App.2d 5/8/02), 818 So.2d 293, writs denied, 02-1520 (La.9/20/02), 825 So.2d 1179, 02-1591 (La.9/20/02), 825 So.2d 1181, the job site was many hours away from the employees’ homes so that their trip in furtherance of employment involved much greater risk of travel than the ordinary work commute. Boyte involved a summary judgment where the appellants contended that a material fact dispute remained regarding the employee’s lack of wages for the return trip from the out-of-state job site. Nevertheless, the alleged factual controversy did not require a reversal of the summary judgment in view of the injured employee’s use of a company vehicle driven by his fellow employee. Just as the employer had surely interested himself in the driver’s transportation to the distant work site, the injured passenger/employee was also within the exclusion to the going-and-eom-ing | ¿rule, and the accident was found to have arisen out of and in the course of employment.
In this case, Leon and Steven attempt to distinguish these cases by arguing that on the morning of the accident they had not gone to the job site in Mandeville and performed work for their employer. Thus, they argue that they were not traveling from work at the time of the accident and were thus outside the “course of employment.”
This time and place distinction suggested by the plaintiffs fails to remove them from the course of their employment. The employment benefit of furnishing the company van was to defray the cost to all the Monroe employees of the long trip to and from Mandeville each week. The employees were on that trip when the accident occurred, having been notified by their employer on the morning of the accident that work had been suspended for the week. The risk of an accident on a long drive was incident to the plaintiffs’ employment, and their leaving for Monroe following the company’s decision to suspend work, regardless of the performance of no work on that date, placed their return commute in the course of employment.
Finally, the assessment of Leon’s expert witness costs against the defendants is reversed. Under La. C.C.P. art. 1920, the defendants were not cast in judgment for Leon’s claims, and we find no separate justification for the assessment in this case. Hodnett v. Hodnett, 86,532 (La.App.2d Cir.9/18/02), 827 So.2d 1205.

{^Conclusion

Based upon the jurisprudential standard for the employer taking an interest in the transportation of the employee to and from the job site and the facts concerning the employees’ return trip to Monroe, we find that the jury’s verdict that Steven was outside the coverage of the Act was clearly wrong and manifestly erroneous and the judgments against the defendants regarding the claims of Steven are reversed. The verdict dismissing the claim of Leon is affirmed, and the assessment of Leon’s expert costs by the trial court against the defendants is reversed. Likewise, because Leon was covered under the Act, the judgment in favor of his wife, Nellie, is reversed. Costs of appeal are assessed to plaintiffs.
*81 AFFIRMED IN PART, REVERSED IN PART.

. Hartec also provided a one-ton truck for employee travel to and from the apartment and job site.