# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-227


**DARRELL REGAN**

**VERSUS**

**EUNICE SUPERETTE, INC.**


************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 4,
PARISH OF LAFAYETTE, NO. 02-3642,
SHARON M. MORROW, WORKERS' COMPENSATION JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of John D. Saunders, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.


**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Michael B. Miller
Miller & Miller
Post Office Box 1630
Crowley, Louisiana 70527-1630
(337) 785-9500
Counsel for Plaintiff/Appellee/Appellant:
Darrell Regan

Christopher R. Philipp
Attorney at Law
Post Office Box 2369
Lafayette, Louisiana 70502-2369
(337) 235-9478
Counsel for Defendant/Appellant/Appellee:
Eunice Superette, Inc.

SULLIVAN, Judge.

In this workers' compensation matter, Darrell Regan and Eunice Superette, Inc.

appeal factual findings and awards made by the Workers' Compensation Judge

(WCJ). For the following reasons, we affirm in part, reverse in part, and remand.

***Facts***

The facts of this matter are essentially undisputed, and we adopt the facts as

outlined by the WCJ.

> Regan was employed with the employer, Eunice Superette, Inc.,
> "The Superette[,]" making sausage and boudin. Regan managed the
> Superette's smokehouse. His job duties included loading and unloading
> trucks with boxes of meat, putting the boxes of meat on racks, taking the
> boxes off the racks, loading them into a cart to bring to the grinder, then
> grinding, mixing and stuffing the meat. Another co-worker who
> sometimes helped in the smokehouse was Willie Burson, the owner's
> nephew.

> On February 23, 2001, the claimant was stuffing sausage.
> [Easton] Rollins [,another Superette employee who worked in the
> smokehouse,] was also in the smokehouse, cutting meat. Willie Burson
> came in the smokehouse and slapped the claimant on the back of the
> neck as a practical joke. Burson testified that this joke was done so
> often they gave it a name, "giving a red neck." Burson demonstrated the
> slap at trial, and it was a good, hard slap. Burson testified that on this
> particular day Regan said he was hurting, so Burson "stopped it right
> there."

> A couple of days later Regan reported an accident to the
> employer. An employer report of injury/illness, form 1007, was
> completed on February 28. Regan told the employer that he injured
> himself "loading a delivery truck [and] picked up a 90 lb. hindquarter &
> hurt his shoulder." Regan gave a similar history to all of his treating
> physicians. He was found to have a herniated cervical disc, and
> eventually surgery was performed. He was released to light duty
> December 11, 2001 by his treating physician, Dr. Ricardo R. Leoni. A
> vocational counselor was assigned to work with the claimant, and
> benefits were terminated in March 2002 based upon a light duty job
> offer by the Superette.

> The employer had filed a disputed claim form 1008 in February
> 2002 to compel the claimant to attend a medical examination. In March
> of that year, the employer filed a motion to compel cooperation with
> vocation rehabilitation. In May the claimant filed a disputed claim form

1008 due to the termination of benefits and requesting penalties and attorney fees. The claims were later consolidated.

The claimant was deposed on October 8, 2002. At the deposition the claimant disclosed for the first time the true nature of the accident. The employer subsequently amended its pretrial questionnaire to set forth the "horseplay" exclusion per La.R.S. 23:1031(D), and later amended to allege that the claimant had violated La.R.S. 23:1208 by misrepresenting the manner in which the accident occurred.

Additional facts pertinent to specific assignments of error are set out in the context of the discussion of each assignment of error.

After trial of the matter, the WCJ rendered judgment in favor of Mr. Regan, awarding him supplemental earnings benefits (SEB) as of March 18, 2002, the date the Superette discontinued those benefits. The WCJ also determined that Mr. Regan was not engaged in horseplay at the time he was injured and, therefore, not excluded from receiving benefits, and that Mr. Regan's initial description of how he was injured, while incorrect, did not merit forfeiture of his benefits. The WCJ denied Mr. Regan's request for penalties and attorney fees as a result of the Superette's discontinuation of his benefits on March 17, 2002, and did not award attorney fees for the Superette's failure to reimburse Mr. Regan for mileage requested on April 8, 2003.

The Superette assigns three errors: 1) the WCJ erred when it reinstated Mr. Regan's SEB; 2) the WCJ erred when it did not find that Mr. Regan's injury was caused by his engaging in horseplay which arose out of his employment with the Superette; and 3) the WCJ erred when it concluded that Mr. Regan did not willfully make a false statement or representation for the purpose of obtaining benefits or defeating its horseplay defense in violation of La.R.S. 23:1208. Mr. Regan assigns two errors: 1) the WCJ's denial of attorney fees for the Superette's arbitrary and

2

capricious failure to pay Mr. Regan's weekly compensation benefits after March 18, 2002 and 2) the WCJ's failure to award penalties and attorney fees for the Superette's failure to pay mileage requested on April 8, 2003.

### *Discussion*

#### *Supplemental Earning Benefits*

The Superette argues that Mr. Regan refused to return to work when it had a position available for him which was within the physical restrictions established by his treating physician. Randall Moore, owner of the Superette, and a vocational rehabilitation counselor testified that the position made available for Mr. Regan to return to work in March 2002 was a light duty position as required by Dr. Leoni. This light duty position was the same position Mr. Regan had with the Superette before he was injured; however, a helper was to do all the lifting over the twenty-five pound maximum weight restriction established by Dr. Leoni.

Mr. Regan testified that, when he reported to work on March 17, 2002, he was informed that he would be performing his old job. He further testified that he was not told that his job was being modified and that he would not have to lift the heavy loads he lifted before his injury. Bobby Taylor, the Superette's plant manager, testified that he met with Mr. Regan the day he went to the store to return to work and that he informed Mr. Regan he would not have to lift heavy loads as he did before his injury. However, Mr. Taylor testified in his deposition that he told Mr. Regan that his job "would have been basically what he was doing before." When questioned in his deposition whether there would have been any difference between Mr. Regan's duties at that time and his duties before he was injured, Mr. Taylor stated, "I don't really know of any difference." Further, he agreed that Mr. Regan was told that he would

3

be doing the same work he did before his injury, explaining that he did not want Mr. Regan to feel that he was being demoted.

It is undisputed that Mr. Regan's job duties before his injury required heavy lifting and that without modification of his position, it did not meet the physical restrictions established by Dr. Leoni. Mr. Taylor's deposition testimony justifies Mr. Regan's refusal to return to work in March 2002. This assignment is without merit.

***Horseplay***

In its second assignment of error, the Superette complains that the WCJ erred in determining that Mr. Regan's injury was not the result of his engaging in horseplay. La. R.S. 23:1031(D) provides:

> An injury by accident shall not be considered as having arisen out of the employment and is thereby not covered by the provisions of this Chapter if the injured employee was engaged in horseplay at the time of the injury.

The testimony of Mr. Regan, Mr. Rollins, and Mr. Burson was that Mr. Regan was not engaged in horseplay when he was injured. They all testified that Mr. Regan did not know Mr. Burson was going to hit him, and Mr. Burson testified that he "snuck up on" Mr. Regan. Even though there was a history of horseplay among these employees, the evidence supports the WCJ's conclusion that Mr. Regan was not engaged in horseplay when he was injured and is, therefore, not excluded from coverage of the workers' compensation act. *See Kirby v. M.L. Smith, Jr., Inc.,* 30,841 (La.App. 2 Cir. 8/19/98), 716 So.2d 933, *writ denied*, 98-2450 (La. 11/25/98), 729 So.2d 566.

4

*False Statements or Misrepresentations*

Lastly, the Superette argues that the WCJ erred in finding that it did not meet its burden of proving that Mr. Regan forfeited his benefits because he violated La.R.S. 23:1208. The WCJ determined that "Regan did make willful misrepresentations to his employer and his doctors when he told them he was injured by a side of beef." However, the WCJ did not find "with a sufficient degree of probability that the misrepresentations were made to obtain workers' compensation benefits." Mr. Regan, Mr. Rollins, and Mr. Burson all testified that Mr. Regan reported a different version of how he was injured to protect Mr. Burson from being penalized for engaging in horseplay.

Forfeiture of benefits under La.R.S. 23:1208 is a harsh remedy which must be strictly construed. *Smith v. Quarles Drilling Co.*, 99-171 (La.App. 3 Cir. 6/2/99), 741 So.2d 829, *writ denied*, 99-1949 (La. 10/8/99), 751 So.2d 227. Whether or not an employee has forfeited his right to benefits under La.R.S. 23:1208 is a question of fact, which will not be reversed on appeal in the absence of manifest error. *Id*.

La.R.S. 23:1208, in part, provides:

> A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
>
> . . . .
>
> E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

In *Flintroy v. Scott Cummins Salvage*, 36,857, p. 12 (La.App. 2 Cir. 3/10/03), 839 So.2d 1231, 1238, *writ denied*, 03-1068 (La. 6/6/03), 845 So.2d 1093 (citations omitted), the court explained the application of La.R.S. 23:1208 as follows:

5

La.R.S. 23:1208 authorizes forfeiture of benefits upon proof that (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. The statute applies to any false statement or misrepresentation made willfully by a claimant for the purpose of obtaining benefits. All of these requirements must be present before a claimant can be penalized. Because this statute is penal in nature, it must be strictly construed, both in its substantive ambit and in its penalty provisions.

The WCJ found that Mr. Regan's explanation for his failure to report the truth about how his accident happened "plausible." In light of the testimony of Mr. Rollins and Mr. Burson, we cannot say that the WCJ's conclusion on this issue is clearly wrong. This assignment is without merit.

### *Penalties and Attorney Fees*

Mr. Regan assigns as error the WCJ's failure to award penalties and attorney fees for the Superette's failure to pay mileage he requested on April 8, 2003. During Mr. Regan's testimony, his attorney introduced a copy of the April 8, 2003 letter containing his request for mileage at issue. At that time, the WCJ and defense counsel noted the exhibit was not being received in evidence for penalties and attorney fees; counsel for Mr. Regan did not dispute this statement. At the conclusion of Mr. Regan's testimony, counsel for Mr. Regan stated:

> MR. MILLER: And, Judge, since there's no penalty and attorney's fee issues, I'm not going to introduce my affidavit. So I think that's all I have.

The following exchange then occurred:

> MR. MILLER: Judge, it may be a little easier to do the three together. It won't take very long to do any of them. You [will have] already decided the case.
>
> JUDGE [MORROW]: Right.
>
> MR. MILLER: It won't be very difficult. You want to do that , Chris?

6

MR. PHILLIPP:    Yeah.

JUDGE MORROW:    Well, reserve them all.  Reserving all penalty and attorney's fee issues.

Mr. Miller, Mr. Regan's attorney, then rested.

In light of the reservation of penalty and attorney fee issues, we find no error with the WCJ's failure to award penalties and attorney fees for the Superette's failure to pay the mileage reimbursement as requested on April 8, 2002.

Even though the issue of penalties and attorney fees was reserved, the WCJ denied Mr. Regan's request for attorney fees for the Superette's discontinuation of his benefits when he failed to return to work in March 2002.  At that time, La.R.S. 23:1201.2 provided, in part:

> Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims.

An act is arbitrary and capricious when it is done willfully and without consideration of the facts and circumstances presented, or it is one based on an unfounded motivation.  *Strother v. Guinn Oilfield Servs., L.L.C.*, 03-1310 ( La.App. 3 Cir. 3/3/04), 867 So.2d 113.  A determination of whether the discontinuance of benefits was arbitrary or capricious must consider the facts known to the employer at the time the benefits were discontinued.  *Whiddon v. Livingston Parish Council*, 00-1349 (La.App. 1 Cir. 9/28/01), 809 So.2d 421, *writ denied*, 01-2893 (La. 1/25/02), 807 So.2d 837.  Facts learned subsequent to the discontinuance cannot serve as justification of the discontinuance.  *Id.*

As previously discussed, Mr. Regan's failure to return to work on March 18, 2002, was reasonable because the job description given to him by Mr. Taylor was for

7

heavy work, not light work as prescribed by Dr. Leoni. Accordingly, the Superette's discontinuance of Mr. Regan's indemnity benefits was arbitrary, capricious, or without probable cause.

The WCJ held that, even though the Superette did not learn about the potential horseplay defense until eighteen months after it discontinued Mr. Regan's benefits, it reasonably controverted his claim for attorney fees under this section. This conclusion was manifestly erroneous, and it is reversed.

The record does not contain the information necessary to determine an appropriate amount for attorney fees; therefore, we remand this matter to the WCJ for the award of attorney fees. The issue of penalties and attorney fees regarding the reimbursement of mileage can be tried at the same time.

### *Disposition*

The WCJ's reinstatement of benefits in favor of Mr. Regan is affirmed. The WCJ's denial of attorney fees for the Superette's discontinuance of Mr. Regan's benefits is reversed, and this matter is remanded for determination of an award of attorney fees, as well as whether Mr. Regan is entitled to attorney fees and penalties for his mileage reimbursement claim. All costs of this appeal are assessed to Eunice Superette, Inc.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**